Commonwealth ex rel. Cartwright, Appellant, *v.* Cartwright et al.

Argued October 2, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*John C. Arnold,* with him *Arnold & Chaplin, Wm. A. Schnader* and *A. J. Straub,* for appellant.

*E. J. Blatt,* with him *T. G. Gregory,* for appellees.

OPINION BY MR. CHIEF JUSTICE MAXEY, November 29, 1944:

This is a proceeding in quo warranto, brought in the Court of Common Pleas of Elk County, to oust the respondents, Robert M. Cartwright, Alice H. Cartwright and Howard Ellinger, as directors of the Clawson Chemical Company, a Pennsylvania corporation, of Ridgway, Pennsylvania.

The relator was Richard E. Cartwright. An alternative writ was issued on May 1, 1944. On May 11, 1944, respondents filed a motion to quash the writ, and on June 27, 1944, President Judge Hipple filed his opinion decreeing that the writ be quashed. This appeal followed. .

The facts are as follows: The shareholders of Clawson Chemical Company are all members of the Cartwright family except respondent Ellinger. The number of shares owned by each shareholder, as shown by the books of the corporation, is as follows:

|  | Shares |
|---|---|
| Richard E. Cartwright................ | 164 |
| Robert M. Cartwright ................ | 157½ |
| Robert M. Cartwright, Trustee ........ | 3 |
| Alice H. Cartwright ................ | 2½ |
| H. B. Ellinger ..................... | 1 |
| Total ..................... | 328 |

At the annual meeting of the corporation held on April 25, 1944, five directors were to be elected. As the company is a Pennsylvania corporation, cumulative voting is permissible.

Richard E. Cartwright cumulated his 164 votes, and distributed them among the candidates for director as follows:

| For Richard E. Cartwright........ | 274 Votes |
|---|---|
| " A. J. Straub ................. | 273 " |
| " Ben E. Taylor................ | 273 " |

The remaining shareholders, who hold in the aggregate (including fractional shares) the same number of shares held by Richard E. Cartwright, multiplied their total number of shares by five, which would give them 820 votes, and cast that number of votes as follows:

For Robert M. Cartwright....... 273⅓ Votes
" Alice H. Cartwright........ 273⅓ "
" Howard Ellinger .......... 273⅓ "

The judges of election declared the election of Richard E. Cartwright, Robert M. Cartwright, Alice H. Cartwright and Howard Ellinger, and that there was a tie for the fifth place on the board between Messrs. Straub and Taylor. This declaration by the chairman was immediately protested on behalf of the relator. The relator contended (a) that the shareholders having half-shares were entitled to vote only their whole shares and (b) that in no event could shareholders divide a single cumulative vote into fractions and cast fractions of a cumulative vote for different candidates.

If we should hold that the counting of the fractional ⅓ votes was a nullity, and that the holders of the ½ shares were improperly allowed to vote *them,* the relator and Messrs. Straub and Taylor were elected, and there was a tie vote for the other two places on the board.

If the ⅓ votes were counted improperly, only one director was elected, and there was a tie vote for the other four places to be filled. If the ⅓ votes were improperly counted and the holders of ½ shares were improperly allowed to vote them, the relator and Messrs. Straub and Taylor were elected, and there was a tie vote for the other two places on the board.

This is the basic question here presented: Is the vote of a stockholder in a private corporation based on the unit of one vote "for every share standing in his name on the books of the corporation," or may he vote also on fractional shares of stock owned by him? Corporations are creatures of the state, and stockholders have only such voting rights as are given them by the state speaking through its organic law or through statutes consistent with the organic law, or by the by-laws of the corporation which are not in conflict with the law of the

state, for at common law each stockholder in a private corporation had but one vote at a stockholders' meeting, no matter how many shares he owned:" 18 Corpus Juris Secundum, Sec. 549, p. 1247.[1]

Section 504 of the Business Corporation Law of May 5, 1933, P. L. 364, 15 P.S. 2852-504 provides that a shareholder in a Pennsylvania corporation has the right to cast "one vote for every share standing in his name on the books of the corporation."

It is provided in Article XVI, Sec. 4 of the State Constitution that: "In all elections for directors or managers of a corporation each member or shareholder may cast the whole number of his votes for one candidate, or distribute them upon two or more candidates, as he may prefer."

Section 505 of the Business Corporation Law (Act of May 5, 1933, P. L. 364; 15 P.S. 2852-505) provides:

". . . In all elections for directors, every shareholder entitled to vote shall have the right, in person or by proxy, to multiply the number of votes to which he may be entitled by the number of directors to be elected, and he may cast the whole number of such votes for one can-

---

[1] "The right of a shareholder to vote at the election of officers, and in regard to by-laws for the management of a business corporation, was formerly precisely analogous to the similar right necessarily possessed by the members of all corporations from their origin, such as the members of a municipal corporation, for instance, still possess. That is, each shareholder was entitled to one vote if given by him in person. . . . The gradual progress from the old view to the modern one is shown by the changes in the power of voting. It soon became usual to allow the larger holder more than one vote, and it was customarily provided in the charters how many votes should belong to the owner of a given number of shares, the owner of a large number having more votes than the owner of a few, but not proportionately more. . . . Except for some such provision, no doubt, each shareholder would have been entitled to but one vote." Law of Business Corporations by Samuel Williston, 2 Harvard Law Review, pages 156 and 157.

didate or he may distribute them among any two or more candidates. . . ."[2]

Appellees contend, and their contention was sustained by the court below, that Sec. 608 of the Business Corporation Law, that is, the Act of May 5, 1933, P. L. 364, Article 4, 15 PS 2852-608, conferred by implication upon a stockholder the right to vote fractional shares of stock standing in his name on the books of the corporation. The court below said:

"The first paragraph of Section 608 can be divided into two parts—(1) the provision that a certificate for a fractional share may be issued; (2) that if the Board of Directors determine scrip or evidence of ownership may be issued, which 'unless otherwise provided,' shall not entitle the bearer or holder to exercise any voting right. There is a distinct difference between a certificate of stock and scrip, or other evidence of ownership. A certificate while merely evidence of ownership of stock is a matter of record on the books of the corporation, and any transfer thereof is evidenced by the issuance of a new certificate to the transferee. Scrip, on the other hand, has none of the attributes of a certificate of stock. It is designed for a different purpose and while it may be issued for unit shares, as well as fractional shares, it still lacks the importance and dignity of a certificate of stock. . . .

"The bearers or holders of scrip or other evidence of ownership are not shareholders by virtue of their scrip or other evidence of ownership. They are holders of nothing more than an engagement of the corporation that they may become shareholders upon fulfilling the conditions set forth in the scrip or other evidence of ownership. (See *Brown et al. vs. Lehigh Coal & Navigation Co.*, 49 Pa. 270.) . . .

---

[2] 19 Corpus Juris Secundum, Section 720, states: "The right of cumulative voting for directors does not exist at common law, it must have been conferred, if at all, by an operative constitutional or statutory provision. . . ."

Sections 504 and 608 of the Business Corporation Law must be read together. The former precludes the Common Law Rule from being effective; the latter in authorizing the issue of a fractional share, clearly indicates that the legislative intent was that a fractional share should have a fractional vote, and this interpretation is strengthened by the fact that Section 608 expressly provides that scrip or other evidence of ownership issued in lieu of a fractional share shall not entitle the bearers or holders to exercise any voting right, unless it is expressly provided. No such limitation is imposed with respect to fractional shares."

The above and further reasoning of the court below is based upon the doctrine of an implied grant of a right. The language of Sec. 608 of the Business Corporation Law supports two possible inferences, to-wit: (1) that the Legislature believed that certificates for fractional shares of stock entitled their owners to a proportionate vote accordingly, but wished to inhibit voting rights based on "scrip or other evidence of ownership" (not including certificates) for fractional shares of stock; (2) that the Legislature believed that voting based on ownership of fractional shares was already interdicted by law or judicial decision and it wished to make it clear that voting based on "scrip or other evidence of ownership" provided for in Sec. 608 was likewise interdicted.

Even if we choose the first inference, judicial recognition of the legislative belief thus indicated would not justify a holding that voting rights based on ownership of certificates for fractional shares of stock was thereby conferred "by implication," as the court declared it to be.

The doctrine of grants of power by implication in statutes is well defined and long understood. It may be expressed by saying that a person who invokes a power allegedly derived from an express grant must show that the power claimed is reasonably required for the exercise of the granted power.

"When a statute grants a right or imposes a duty, it also confers by implication every particular power necessary for the exercise of the one or the performance of the other": 25 R. C. L., Sec. 228, p. 980. "The extension of an enactment by implication is confined to its strictly necessary incidents or logical consequences": Endlich on "The Interpretation of Statutes," Sec. 422.[3]

The legislature authorized the issue of certificates for fractional shares, but it did not authorize voting based on such shares. It *could* have done so, and it may even have *intended* to do so, but the fact is *it did not* do so. "As the court in construing a statute must ascertain and give effect to the legislative intent as expressed in the language of the statute, the court cannot, under its powers of construction, supply omissions in a statute, especially where it appears that the matter may have been intentionally omitted. It makes no difference that the omission resulted from inadvertence, or because the case in question was not foreseen or contemplated, . . .": 59 Corpus Juris, Sec. 576, p. 974. "The intention and meaning of the Legislature must primarily be determined from the language of the statute itself, and not from conjectures aliunde. When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning. This principle is to be adhered to notwithstanding the fact that the court may be convinced by extraneous circumstances that the legislature intended to enact something very different from that which it did enact": 25 R. C. L., Sec. 217, p. 961. Citing cases. "When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pur-

---

[3] See *Citizens Electric Illuminating Company v. Lackawanna and Wyoming Valley Railroad Company*, 255 Pa. 176, 183; 12 Coke 131; *Heard v. Pierce*, 8 Mass. 338.

suing its spirit": Section 51 of Article IV of the Statutory Construction Act of May 28, 1938, P. L. 1019, 46 PS 551.

In *Peters v. Condron,* 2 Serg. & R. 80, it was held that where an act had conferred upon an officer the right to receive the *proof or acknowledgment* of all instruments in writing conveying land *within the county* in which he had jurisdiction, and a later statute enlarged his authority to take *acknowledgments* of deeds for lands *in any part of the state,* his power to receive *proof* of deeds remained *restricted* to deeds conveying land *in his own county.* Chief Justice TILGHMAN in answering the question: "Why was he [the recorder of Philadelphia] not authorized [by the Act of April 11, 1799] to receive the proof of deeds" since he was authorized by that Act "to take *acknowledgment of* deeds," said: "I know not; but as no such authority was given, we cannot confer it on him."

The power in a stockholder to *vote* fractional shares of stock is not required for the exercise of the corporation's power to *issue* such shares of stock. If a corporation merely issued shares of stock and the law did not confer on the owner thereof the power to vote *all* of such shares, he would have only one vote, as at common law. When a holder of more than one share of stock claims the right to cast more than one vote he must point to a statute giving him that right. In Pennsylvania he can show his statutory authority to cast one vote for every full share of stock he owns, but he cannot show any statutory authority for his casting fractional votes for every fractional share of stock he owns. This right is clearly not conferred by implication for it is not necessary to the exercise of any right expressly granted. If, for example, a statute conferred upon qualified citizens the right to cast one vote, say on the question of a bond issue by the municipality in which the voter was an elector, for every acre of real estate the voter owned in that

municipality, a voter possessed of 2½ acres of real estate could not cast 2½ votes, and the fact that the law authorized the issuance to a voter of "scrip" entitling him to receive a deed to a full acre upon his surrender later of such scrip or other evidence of ownership aggregating a full acre, but providing that he was not entitled to vote on that *scrip*, would not by implication confer upon him the right to cast a *fraction* of a *vote* based upon his ownership of a *fraction* of an *acre* even if he did have a *deed* to that fractional acre.

In Article 1, Section 4 of the by-laws of the company under consideration it is set forth:

"At all meetings of the stockholders, every stockholder of record shall be entitled to one vote for every share of stock standing in his name on the books of the corporation."

This provision would, even in the absence of any law on this subject, be decisive of the question now before us. The court below held that this provision "conflicts with Section 608 of the Business Corporation Law and insofar as it attempts to restrict the voting of fractional shares it would be invalid." We find no such conflict; on the contrary, we find the provision to be in accord with Section 504 of the Business Corporation Law.

It is argued that a stockholder's voting rights should be mathematically co-extensive with his pecuniary interest in the corporation and that if his ownership of stock runs into fractions he should be permitted to cast a vote based on these fractions. This is a suitable argument to be addressed to the Legislature, but as courts have no power to legislate, the argument cannot affect their construction of the law. It may be said, however, that the Legislature may wisely have hesitated to confer upon stockholders the right to vote fractional shares of stock because of the complications and confusion in voting which would inevitably result. The court below concedes that "the right to cast a fractional vote based

upon a fractional share would involve expense and inconvenience to the corporation, would complicate its books and stock records, . . . and that numerous disputes over the voting rights of fractional shares would be inevitable. . . . A corporation authorized to issue fractional shares could issue a certificate for any fractional interest, ½ share, 1/10 share, 1/100 share, 1/1000 share, or in any fraction. Undoubtedly the issuance of such fractional shares would lead to many complexities, particularly in the case of cumulative voting." But the court adds: "However, corporations are not compelled to issue fractional shares; they are merely given the right to do so, and if they desire to avoid the difficulties arising from voting fractional shares, they can issue scrip or other evidence of ownership." While this is true, the state which is the parent of its corporations might have deemed it wise to save corporations from the possibility of the complexities the court below has so aptly portrayed, by withholding from shareholders the right to cast votes based upon their ownership of fractional shares. We hold that the fractional shares of stock standing in the names of the appellee shareholders of Clawson Chemical Company could not lawfully have been used by them as a basis for their voting for directors at the annual meeting of the corporation held on April 25, 1944, cumulatively or otherwise. If these fractional shares of stock had not been so used as a basis of voting, it is evident from a simple mathematical calculation that the respondents would not have received enough votes to insure their election as directors. The demand for an ouster is therefore sustained.

The order quashing the writ of quo warranto is reversed and the record is remitted to the court below with directions to enter a judgment of ouster against the respondents.