# Crosbie v. City of Philadelphia

*William H. Seyfert*, for plaintiffs.

*Karl I. Schofield*, Assistant City Solicitor, *David Berger*, City Solicitor, *Edward B. Soken* and *C. Brewster Rhoads*, for defendants.

CHUDOFF, J., June 12, 1959.—This matter, of more than average significance, comes before the court upon defendants' preliminary objections in the nature of a demurer to plaintiffs' complaint in assumpsit, in which plaintiffs seek a refund of personal property taxes for the years 1954 and 1955 from the City of Philadelphia and the School District of Philadelphia, alleged to have been improperly paid by plaintiffs, as executors of the estate of Henry P. Schneider, deceased.

Since it is well settled under Pennsylvaina practice[*] that preliminary objections in the nature of a demurrer admit as true all well pleaded facts in plaintiffs' complaint, but not the pleader's conclusions or averments,

---

[*] Narehood v. Pearson, 374 Pa. 299, 302 (1953); Ross Lumber Co. v. McMillan & Co., 69 D. & C. 47 (C. P. Allegheny County) (1949).

the court finds the following to be the facts giving rise to this action.

Henry P. Schneider died on October 18, 1953, leaving a will in which plaintiffs were appointed executors, and whereby, after a devise of real estate and 10 separate pecuniary bequests, testator bequeathed the residue of his estate to his wife, on the condition that, in the event that she should predecease testator, or in the event of her death within six months after the death of testator, the residue is to be given to the Nazarene Home for the Aged of Philadelphia, a nonprofit Pennsylvania corporation, operating a home for elderly women.

The complaint does not set forth the death of testator's wife. It has however, been stipulated of record by all the parties, that testator's wife predeceased him by approximately one week, having died on October 11, 1953, thereby making the Nazarene Home for the Aged the residuary legatee.

At the written request of the Nazarene Home for the Aged, residuary legatee, all stocks, bonds, mortgages and other securities of decedent, including all securities subject to the county and school district personal property taxes, were retained by the executors for distribution to it in kind.

During the administration of the estate, the executors sold real estate of decedent, taking back purchase-money mortgages totaling $105,000, with the written consent and approval of the Nazarene Home for the Aged, which agreed to accept them in kind in distribution.

Plaintiffs, as executors, filed their first and final account which was confirmed by the Orphans' Court of Philadelphia County on June 24, 1955. The adjudication awarded the residuary estate to the Nazarene Home for the Aged of the City of Philadelphia. A schedule of distribution approved by the orphans' court, dated August 4, 1955, showed distribution of

the residuary estate in the amount of $306,324.48, and the income thereon, to the Nazarene Home for the Aged.

As executors, plaintiffs retained possession and control of the securities during 1954 and 1955 until after the schedule of distribution was approved by the orphans' court on August 4, 1955. Plaintiffs, as executors, filed the 1954 county and school district personal property tax returns, which, together with an additional assessment by the Board of Revision of Taxes, showed taxable items totaling $51,879 as of January 1, 1954. Plaintiffs paid the tax thereon as follows: May 26, 1954, $300.11; and December 30, 1954, $111.90, for a total of $412.01. Plaintiffs further filed a 1955 county and school district personal property tax return showing taxable items of the value of $141,051.75, as of January 1, 1955, and paid a tax thereon in the amount of $1,117.14 on May 17, 1955.

On December 27, 1955, plaintiffs filed a petition for refund of the aforesaid taxes with the board of revision of taxes which was refused. On January 19, 1957, plaintiffs filed appeals with the tax review board which dismissed the appeal on the ground that it lacked jurisdiction over the issue presented.

The power of this court to assume jurisdiction over the matter in issue is derived from the Act of May 21, 1943, P. L. 349, sec. 2, as amended, 72 PS §5566c. This section reads as follows:

"In the event of refusal or failure on the part of authorities of the political subdivision involved to make any such refund of taxes, license fees, penalties, fines or other moneys to which the political subdivision is not legally entitled, then the aggrieved person or corporation shall have the right to bring suit for and recover any such taxes, license fees, penalties, fines or other moneys to which the political subdivision is not legally entitled, subject to the limitation herein provided, by instituting an action in assumpsit in the

court of common pleas of the county wherein such political subdivision is located."

Initially, it is to be noted that securities held by executors are subject to the personal property tax imposed by the Personal Property Tax Act of June 17, 1913, P. L. 507, as amended, 72 PS §4821, et seq.: Dalzell Estate, 96 Pa. Superior Ct. 467. It is the contention of plaintiffs, however, that the securities which they held as executors on January 1, 1954, and January 1, 1955, had been set aside for charitable purposes, and were therefore exempt from the personal property taxes by virtue of the ruling of our Supreme Court in Buhl's Estate, 300 Pa. 29, 150 Atl. 86.

Presented for the Supreme Court's determination and interpretation in Buhl's Estate, supra, was section 1 of the Personal Property Tax Act of June 17, 1913, P. L. 507, which provided as follows:

"All personal property of the classes hereinafter enumerated, owned, held, or possessed by any person, persons, copartnership, or unincorporated association or company, resident, located, or liable to taxation within this Commonwealth, or by any joint-stock company or association, limited partnership, bank or corporation whatsoever, formed, erected, or incorporated by, under, or in pursuance of any law of this Commonwealth or of the United States, or of any other State or government, and liable to taxation within this Commonwealth, whether such personal property be owned, held, or possessed by such person or persons, copartnership, unincorporated association, company, joint-stock company or association, limited partnership, bank or corporation in his, her, their, or its own right, or as active trustee, agent, attorney-in-fact, or in any other capacity, for the use, benefit, or advantage of any other person, persons, copartnership, unincorporated association, company, joint-stock company or association, limited partnership, bank, or corporation,

—is hereby made taxable, annually, for county purposes, and, in cities co-extensive with counties, for city and county purposes, at the rate of four mills on each dollar of the value thereof, and no failure to assess or return the same shall discharge such owner or holder thereof from liability therefor."

On the point under consideration, this section of the Act of 1913 was exactly the same as section 1 of the Act of June 1, 1889, P. L. 420, which was construed in General Assembly v. Gratz, 139 Pa. 497, 20 Atl. 1041, and section 1 of the Act of June 8, 1891, P. L. 229, which was construed in Mattern v. Canevin, 213 Pa. 588, 63 Atl. 131, as not imposing this character of tax on securities devoted to public charity. This being so, the court in Buhl's Estate, supra, quite properly applied the rule that where in a later act the legislature uses the same language as in a prior cognate statute, which has been construed by the Supreme Court, the presumption is that the language thus repeated is to be interpreted in the same way it previously had been when considering the earlier statute: Spangler's Estate, 281 Pa. 118, 126 Atl. 252; Bell v. Bell, 287 Pa. 269, 135 Atl. 219.

It should be noted that the decisions in General Assembly v. Gratz, supra, and Mattern v. Canevin, supra, are not based on an exempting clause in any statute, but on the legal conclusion that the true interpretation of the Acts of 1889 and 1891 is that the legislature did not intend to abandon its long established policy of refusing to tax securities devoted to purely public uses. It follows that as the Act of 1889 did not charge purely public charities with the kind of tax in question, and the Act of 1913 as originally enacted was in exactly the same language, the court in Buhl's Estate, supra, very properly held that bonds, shares of stock and other securities which were held for charitable uses were not subject to the annual tax imposed by the Personal Property Tax Act of June 17, 1913, P. L. 507, and other similar statutes; and this

is so although they were still in the hands of the executors for administration purposes, if neither they nor the proceeds thereof were distributable for any other or additional use.

Subsequent to the Buhl case, supra, the legislature, by the Act of June 19, 1939, P. L. 413, 72 PS §4821, amended the Act of 1913 to read, in part:

"All personal property of the classes hereinafter enumerated, owned, held or possessed by any resident . . . whether such personal property be owned, held, or possessed by such resident in his, her, their, or its own right, or as active trustee, agent, attorney-in-fact, or in any other capacity, or by any resident as trustee, agent or attorney-in-fact, jointly with one or more trustees, agents or attorney-in-fact domiciled in another state, where such personal property is held and managed in this Commonwealth, *except as executor or administrator of the estate of a nonresident decedent, and except as trustee for a resident or nonresident religious, charitable or educational organization, no part of the net earnings of which inures to the benefit of any private stockholder or individual . . .*" (Italics supplied, and indicates matter added by 1939 amendment.)

The amendment of 1939 also amended section 1 of the Act of 1913 in another part to read:

"And provided further, That corporations, limited partnerships, and joint-stock associations, liable to tax *on their shares or the aforesaid* capital stock *or franchise tax* for State purposes, shall not be required to make any report or pay any further tax, under this section, on the mortgages, bonds, and other securities owned by them in their own right; but corporations, limited partnerships, and joint-stock associations, holding such securities as trustees, executors, administrators, guardians, or in any other manner, except as mere custodian for the real owner, and *except as*

*executor or administrator of the estate of a nonresi-
dent decedent, and except as trustee for a resident or
nonresident religious, charitable or educational organi-
zation, no part of the net earnings of which inures to
the benefit of any private stockholder or individual,*
shall return and pay the tax imposed by this section
upon all securities so held by them as in the case of
individuals: . . ." (Italics supplied, and indicates
matter added by 1939 amendment.)

It is of more than passing interest that the fore-
going excerpts from the Act of 1939 have not been
changed in any pertinent respect by any later amend-
ments up to and including the amendment of January
14, 1951, P. L. (1952) 2035, sec. 1, 72 PS §4821.

The question thus presented for the court's deter-
mination is whether or not the legislature by its
amendments of 1939 intended to modify the applicable
law as it has existed since the ruling in Buhl's Estate,
supra.

In the first of the quoted parts of the amendment,
it is of noteworthy significance that the legislature
excepted property "held by an *executor or an admin-
istrator* of a nonresident decedent" but in the following
line pointedly omitted the words executor or admin-
istrator and excepted only property held by a *"trustee*
for a resident or nonresident religious, charitable, or
educational organization." (Italics supplied.)

The second part of the amendment quoted provides
that corporations shall not be taxable on securities
owned in their own right, but further provides that
securities held as trustee, executor, administrator or
guardian are taxable, with the exception only of secu-
rities held as *executor or administrator* of the estate
of a nonresident decedent, or as *trustee* for a resident
or nonresident charitable organization.

The gist of plaintiffs' argument is that notwithstand-
ing the plain and unambiguous language of the Act

of 1939, as amended, the legislature must have intended, and this court should construe the statute, to include within the exceptions to the tax, *executors and administrators* for a "resident or nonresident religious, charitable or educational organization." This the court refuses to do. In construing a statute, the court must ascertain and give effect to the legislative intention as expressed in the language of the statute, and cannot under its powers of construction, supply omissions in a statute, especially where it appears that the matter may have been intentionally omitted: Commonwealth ex rel. Cartwright v. Cartwright, 350 Pa. 638, 645, 40 A. 2d 30; Kusza v. Maximonis, 363 Pa. 479, 70 A. 2d 329; Panik v. Didra, 370 Pa. 488, 88 A. 2d 730; Infants' Welfare League Camp, Inc. Tax Assessment Case, 169 Pa. Superior Ct. 81, 82 A. 2d 296. See also Statutory Construction Act of May 28, 1937, P. L. 1019, secs. 33, 51 and 52, 46 PS §§533, 551, 552.

Applying this well recognized rule to the case at bar, it appears to the court that the Act of 1939, as amended, clearly demonstrates that plaintiffs, as executors, are subject to the tax imposed and it is therefore incumbent upon them to show any exemption. The exemption provision of this statute is not to be liberally construed. Under our Pennsylvania authorities, exemption provisions must be strictly construed (Commonwealth v. Sunbeam Water Co., 284 Pa. 180, 130 Atl. 405), and that is the general rule: Saxe v. Board of Revision of Taxes, of City of Philadelphia, 107 Pa. Superior Ct. 108, 163 Atl. 317; Commonwealth v. Lowry-Rodgers Co., 279 Pa. 361, 123 Atl. 855; Commonwealth v. Wark Co., 301 Pa. 150, 151 Atl. 786. See also Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 58(5), 46 PS §558(5).

Furthermore, it is also settled law in Pennsylvania that a change of language in subsequent statutes on

the same matter indicates a change of legislative intent: Commonwealth v. Lowe Coal Co., 296 Pa. 359, 366, 145 Atl. 916. Why else would the legislature change the language? Because it wanted to limit the exclusion of the imposition of the tax in question only to those expressly excepted in the statute. In Saint Paul Mercury Indemnity Company's Appeal, 325 Pa. 535, 537, 191 Atl. 9, the court said, "where a provision of an act is expressly stated to apply to named persons or groups, those persons and groups not named are excluded." See also Haughey v. Dillon, 379 Pa. 1, 108 A. 2d 69. In view of the fact that the amendment of 1939 in no part includes executors or administrators for a "resident or nonresident, religious, charitable, or educational organization" to be excepted from the tax, it therefore follows from the aforementioned rule that it was the legislature's intention that plaintiffs be excluded from any tax exemption.

It is the court's view that Buhl's Estate was based on a premise of doubtful validity, namely, that although the legislature had not exempted securities held by charities from the tax, the court would do so because it felt that the legislature did not really intend to tax the charities. As a result of the 1939 amendment, however, the legislature having Buhl's Estate in mind, fixed the exact point at which securities held by an executor attained a tax exempt status. This point of time is when the securities are transferred to the charitable trustees.

To adopt the theory set forth by plaintiffs, it would require this court's saying that the amendment of 1939 was intended to have no force and effect upon Buhl's Estate. This, we believe was not the intention of the legislature. To the contrary, the act of the legislature is clear and unambiguous and the legislature is presumed to mean what it says: Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 51, 46 PS

§551: Commonwealth ex rel. Cartwright v. Cartwright, supra.

For the foregoing reasons the defendants' preliminary objections are sustained and the complaint is dismissed.

### Order

And now, June 12, 1959, defendants' preliminary objections are sustained and the complaint is dismissed.