In re WOODINGS–VERONA TOOL WORKS, INC., a corporation Debtor.

Robert L. BAIZ, Movant,

v.

WOODINGS–VERONA TOOL WORKS, INC., a corporation, Respondent.

Bankruptcy No. 91–20409–JKF.
Motion No. C & L(1).

United States Bankruptcy Court, W.D. Pennsylvania.

Aug. 18, 1993.

George M. Cheever, for debtor.

Douglas A. Campbell, for Robert L. Baiz.

David Rudov, for Former Committee of Unsecured Creditors.

## MEMORANDUM OPINION

JUDITH K. FITZGERALD, Bankruptcy Judge.

The matter before the court is a "Motion for Order Declaring Announced Results of Directors' Election Invalid, Declaring Identity of Validly Elected Directors, Directing Expense Reimbursement, Imposing Sanctions and Other Appropriate Relief for the Benefit of Debtor's Shareholders." The motion was filed on behalf of Robert L. Baiz, a minority shareholder with 11.181% of Debtor's New Common Stock[1], who obtained his shares by investment through the confirmed plan of reorganization. He was a member of Reorganized Debtor's board of directors until the disputed election which was conducted in March of 1993.[2] The motion was filed on March 19, 1993, one year and one day after the plan of reorganization was confirmed on March 18, 1992, and before this court entered a final decree on April 15, 1993. The final decree included a provision for retention of jurisdiction over this motion and two pending adversary proceedings. The confirmed plan was proposed by an investment group which included Baiz and a former creditor of Woodings Verona Tool Works, Inc. Referred to as "the Spotswood plan," it was contested by Debtor. It provided for a changeover in management and ownership to the new investment group which included Baiz. In exchange, the investment group put $400,000.00 in new equity capital into the company. Of that sum, Baiz contributed $90,000.00 and received 999.169 shares, or 11.181%.

The crux of Baiz's grievance concerns the notice sent by the chairman of Reorganized Debtor's board of directors announcing the election of board members to be conducted at the annual shareholders' meeting. Baiz asserts that the notice con-

---

1. New Common Stock is the term applied to stock issued by the Reorganized Debtor under the terms of the plan.

2. Baiz also was an employee of Debtor, pre- and postconfirmation, until recently. He was one of the original board members of the Reorganized Debtor.

tained voting instructions which violated the provisions of the plan of reorganization and the amended articles of incorporation enacted thereunder. Baiz contends that the election conducted according to those instructions was invalid. He seeks to set aside the election and recalculate the votes.[3] Baiz made his objections to the board at the shareholders' meeting and requested a continuance of the election until this court could rule on the propriety of the voting procedures. The request was denied by the board. After voting concluded, Baiz objected again and asked the board to set aside the election. The chairman declared Baiz's objection and motion to be out of order. Baiz then filed the instant motion with this court.[4]

Baiz supports his contentions by citing § 6.02 of the confirmed plan of reorganization which states, inter alia, that the amended articles of incorporation would provide "that each share of New Common Stock shall be entitled to one vote on the election of directors and on other matters properly brought before a meeting of shareholders." The amended articles conform to this requirement of the plan. The language in the annual shareholder meeting notice to which Baiz objects stated that shareholders may cast "one vote per share for each director nominee (up to five nominees)." Although Baiz was one of seven

nominees on the slate of candidates, he was not one of the five directors elected. Baiz contends that the voting method contained in the notice is a form of cumulative voting which is impermissible under the plan and the amended articles of incorporation. The parties agree that one purpose of the plan and the amended articles was to eliminate cumulative voting.

Reorganized Debtor contends that the notice is consistent with the plan and amended articles and with the concept of "straight voting." Baiz contends that under the language of the plan and amended articles shareholders have only one vote per share and, therefore, can cast only one vote regardless of the number of directors to be elected without the ability of applying that vote to each director. For example, under Baiz's construction, an owner of five shares has five total votes which could be cast either as five votes for one candidate or divided among the various candidates. A holder of one share, presumably, could cast only one vote for one of the nominees, regardless of the number of positions on the board which were open for election. Using the same hypothetical, the voting method that was employed permitted a holder of five shares to place five votes for each nominee for which the shareholder voted.[5]

**3.** At trial, a stipulated proffer was made that if called as a witness, J. Randall Spotswood, a majority shareholder, would testify that if this election is invalidated, he would cast his votes differently, necessitating a new election rather than a recalculation of votes.

**4.** This is the second time that a motion concerning implementation of a provision in the plan has been brought to this court by Baiz. Reorganized Debtor asks us to abstain. To the extent that the matter before us could be construed as an interpretation of the relevant amended articles of incorporation, a matter of state law, we have the discretion to abstain under 28 U.S.C. § 1334(c)(1). However, this court retained jurisdiction under § 8.01 of the plan to resolve disputes regarding plan interpretation and implementation of the plan. Because this matter involves interpretation and implementation of plan provisions which designated the type of stock and voting rights from which the amended articles were drawn, we will not abstain. 11 U.S.C. § 1142. Counsel for Debtor cites 15 Pa.

Cons.Stat.Ann. §§ 102 and 1793 for the proposition that only the court of common pleas has jurisdiction over disputes concerning corporate actions. Insofar as we find that the issue to be decided is cognizable under the Bankruptcy Code, the Supremacy Clause controls over that provision of state law in this case.

**5.** Baiz complains that the method of voting used in this case constituted five different elections rather than one for the election of five directors. He is incorrect. There were five positions to be filled on the board and one election was held, with seven nominees, to fill five vacancies. We note that § 1758(b) of the Pennsylvania Business Corporation Law provides that "if ... directors of more than one class are to be elected, each class of directors shall be elected in a separate election". 15 Pa.Cons.Stat.Ann. § 1758(b). Although this section is not on point, because in this case there is only one class, it indicates that more than one director's seat may be slated in one election.

■ The controversy in this case centers around the interpretation of language in the plan and amended articles of incorporation, providing that each share of stock entitles the holder to one vote "on the election of directors", and the language in the annual shareholders' meeting notice providing that there would be "one vote per share for each director nominee (up to five nominees.)". The operative section of the Pennsylvania Business Corporation Law provides:

(a) **General Rule.**—Unless otherwise provided in the articles, every shareholder of a business corporation shall be entitled to one vote for every share standing in his name on the books of the corporation. The articles may restrict the number of votes that a single holder or beneficial owner, or such a group of holders or owners as the bylaws may define, of shares of any class or series may directly or indirectly cast in the aggregate for the election of directors or on any other matter coming before the shareholders on the basis of any facts or circumstances that are not manifestly unreasonable, including without limitation:

(1) the number of shares of any class or series held by such single holder or beneficial owner or group of holders or owners; or

(2) the length of time shares of any class or series have been held by such single holder or beneficial owner or group of holders or owners.

. . . . .

(c) **Cumulative voting.**—

(1) Except as otherwise provided in paragraph (2)[6] or in the articles, in each election of directors every shareholder entitled to vote shall have the right to multiply the number of votes to which he may be entitled by the total number of directors to be elected in the same elec-

tion by the holders of the class or classes of shares of which his shares are a part and he may cast the whole number of his votes for one candidate or he may distribute them among any two or more candidates.

(2) The shareholders of a corporation not incorporated under the Business Corporation Law of 1933 or this subpart, the shareholders of which were not entitled to cumulate their votes for the election of directors at the date the corporation became subject to the provisions of the Business Corporation Law of 1933 or became or becomes subject to the provisions of this subpart, shall be entitled so to cumulate their votes only if and to the extent its articles so provide.

15 Pa.Cons.Stat.Ann. § 1758 (footnotes omitted). Thus, unless the articles of incorporation expressly provide otherwise, cumulative voting is the rule in Pennsylvania. All those involved in the instant dispute agree that the intent of the plan proponent and creditors was to do away with cumulative voting under the plan and the amended articles. Therefore, the validity of the election depends on the definition of straight (noncumulative) voting and whether the voting method used in this case conformed with that definition.[7]

■ Straight or noncumulative voting "limit[s] a shareholder to voting no more than the number of shares he owns for a single candidate. In noncumulative voting, a majority shareholder will elect the entire board of directors." BLACK'S LAW DICTIONARY at 1052 (6th ed. 1990). That is, "each shareholder votes the number of shares he owns for as many candidates as may be elected. If two directors are to be elected, the shareholder may vote the number of shares he owns for each of the two candidates. Under this procedure, the man who owns a majority of the shares can elect the entire board of directors." *Giv-*

---

**6.** Paragraph (c)(2) of § 1758 is not applicable in this case.

**7.** Under the common law, which applies in the absence of a statute, shareholders had only one vote, regardless of the number of shares held. By statute Pennsylvania changed common law.

*See Commw. ex rel. Cartwright v. Cartwright,* 350 Pa. 638, 646, 40 A.2d 30, 34 (1944). The articles in question do not restrict voting rights to the common law form and Baiz does not request this court to construe them as a common law method of voting.

*ens v. Spencer,* 232 Ga. 806, 209 S.E.2d 157 (1974).

■ Cumulative voting is defined as a "[t]ype of voting in which a stockholder may cast as many votes for directors as he has shares of stock multiplied by the number of directors to be elected". BLACK'S LAW DICTIONARY at 380 (6th ed. 1990). *See Tabas v. Commw., Dept. of Banking,* 54 Pa.Cmwlth. 518, 522 n. 6, 422 A.2d 716, 718 n. 6 (1980). *See also State ex rel. Swanson v. Perham,* 30 Wash.2d 368, 191 P.2d 689, 691–92 (1948) (cumulative voting affords stockholders the ability to multiply the number of shares held by the number of directors to be elected whereas straight voting does not). Cumulative voting is a procedure "designed to give some control to minority shareholders." *Givens, supra,* 209 S.E.2d at 157.

■ Baiz's proposed voting method, in which the maximum number of votes that could be cast for the election of all five directors would equal the total number of shares held by the voter, is neither straight nor cumulative voting and is not available to the shareholders of Reorganized Debtor. Baiz requests the court to adopt what he referred to during his testimony as "delicatessen voting," which is a hybrid of straight and cumulative voting in that each share can cast one vote at any election regardless of the number of vacancies to be filled.[8] Pennsylvania law does not recognize Baiz's suggested methodology.[9] Even if "delicatessen voting" could be adopted through articles of incorporation,

these articles do not authorize such a voting procedure. The instructions to shareholders specify that each share could cast one vote for each of the five positions to be filled. This method comports with the explanation of straight voting in *Givens v. Spencer, supra,* with ordinary business practice, as noted in the testimony of Odis Little, the former chairman of the Unsecured Creditors' Committee and now a minority shareholder in and director of Reorganized Debtor, and with the articles of incorporation which authorize straight voting. The voting instructions in this case authorized straight, not cumulative, voting. Therefore, the plan and amended articles were not violated and the election was conducted in a valid manner. Based on the foregoing, we find that the March, 1993, election of the board of directors of the Reorganized Debtor was valid and the directors were properly declared and seated.

Another argument made by Baiz will be addressed. Baiz and Reorganized Debtor agree that under the plan of reorganization as confirmed it was contemplated that Debtor's former unsecured creditors would receive a minimum of fifty percent of the New Common Stock and thereby be able to maintain a presence on the board of directors. In fact, those creditors received 50.3%. Baiz also attacks the election on the ground that because it was never made clear in Debtor's disclosure statement and plan process[10] that majority shareholders would be able to control the board of directors in future elections, the election as conducted was unfair. The fact that ma-

---

**8.** Baiz's suggestion would permit *all* shares to be cast for one director. Thus, if there were five vacancies, theoretically all shareholders could cast all their ballots for one director, with the result that after the election there would still be four vacancies, something akin to cumulative voting, which the plan strove to avoid.

**9.** *Cf., Commw. ex rel. Cartwright v. Cartwright,* 350 Pa. 638, 646, 40 A.2d 30, 34 (1944) (stockholders cannot vote fractional shares absent statutory authority). Likewise, a vote cannot be split into pieces to enable fractional votes because "[c]orporations are creatures of the state, and stockholders have only such voting rights as are given them by the state speaking through its organic law or through statutes consistent with

the organic law, or by the by-laws of the corporation which are not in conflict with the law of the state...." *Commw. ex rel. Cartwright v. Cartwright,* 350 Pa. 638, 40 A.2d 30 (1944).

**10.** No objection to the adequacy of this disclosure or the choice of words used in the plan to describe the voting powers of New Common Stock shareholders was made by any party in interest, including Baiz, prior to or during the several contested disclosure statement and plan hearings conducted in this case. The court found that the disclosure statement contained adequate information pursuant to 11 U.S.C. § 1125 and that the plan met the requirements of 11 U.S.C. § 1129. Those orders were not appealed.

jority shareholders have the power to control the board is an obvious result of noncumulative voting. To the extent that Baiz's argument suggests that the plan was a guarantee to former unsecured creditors that they would maintain a seat on the board, we note that no guarantee is expressed in the plan or disclosure statement. Moreover, Odis Little testified, and we credit his testimony, that the matter was not at issue, was never discussed and had no part in the decision of the committee to recommend acceptance of the plan to other creditors.[11] Furthermore, the former unsecured creditors retained a presence on the board after the March, 1993, election because two of its members were elected to the board. Baiz's argument is without merit.[12]

■ Baiz's final request is for sanctions in the form of reimbursement for expenses he incurred in prosecuting this motion. Sanctions are not in order inasmuch as there was no sanctionable conduct on the part of Reorganized Debtor, the board members who were elected, or those who were responsible for the notice of the annual meeting. Second, reimbursement is intended for the actual costs incurred by directors in fulfilling the duties of their office. Baiz's motion, although motivated by a concern for shareholders,[13] was also for the purpose of securing for himself a place on the board in an effort to turn his minority interest into cash, as he testified. He failed to gain sufficient votes to win the election. His effort was not one in fulfillment of his duties as a board member. Rather, it was a personal undertaking by a dissident shareholder/director whose view of the company's future did not coincide with that of other directors. His effort to win a seat so as to be in a position to advance his vision of the best interests of the company is laudatory. However, it is not within the duty of a director to seek reelection. The motion for sanctions will be denied.

---

11. The committee's counsel's letter to creditors recommending the Spotswood Plan stated that that plan would give unsecured creditors "an assurance of greater input in the management of the reorganized [Debtor] ... since creditors will own at least 50% of the new common stock" and that they would be able to elect "at least 2 new board members in the future". Stipulated Exhibit 3. This is an accurate statement of the effect of noncumulative voting which provides for majority control of the board. The election at issue resulted in the election to the board of two former creditors. Indeed, if all former unsecured creditors voted as a block, they could elect more than two directors because, as a block, they are a small majority with 50.3% of the stock. *See also* BLACK'S LAW DICTIONARY at 380 (cumulative voting allows substantial minority shareholders to secure representation on the board of directors).

12. Baiz was never an unsecured creditor of Debtor and his standing to raise this issue, which affects only the former unsecured creditors who are now shareholders, is not self-evident. However, no party in interest has raised the issue of his standing and we proceed to the merits.

13. Evidence was submitted that Reorganized Debtor has rejected offers to purchase its assets. Even if Reorganized Debtor acted in bad faith and rejected offers to purchase, as Baiz implies, that is not relevant to the validity of the election which is the only issue before this court. To the extent that minority shareholders are dissatisfied with management's actions, their remedies lie outside this bankruptcy proceeding.