## Fractional Shares of Bank Stock

UMSTED, Deputy Attorney General, July 19, 1946.
—You have submitted to us several questions with regard to the rights of the holders of fractional shares of capital stock of banks, bank and trust companies and trust companies under your supervision. Specifically you refer to section 409 of the Banking Code of May 15, 1933, P. L. 624, as amended by the Act of January 2, 1934, P. L. 128, 7 PS §819-409.

For the purpose of better answering your questions we state them as follows:

1. What voting rights have fractional shares under the Banking Code and what voting rights had they before the effective date of the Banking Code?

2. What rights to dividends had fractional shares before the effective date of the Banking Code and what rights to dividends do they now have?

3. What voting rights did the holders of scrip or other evidences of ownership of fractional shares have before the effective date of the Banking Code and what voting rights do holders of such scrip and other evidences of ownership now have?

4. What rights to dividends did the holders of scrip or other evidences of ownership of fractional shares have before the effective date of the Banking Code and what rights to dividends do holders of such scrip or other evidences of ownership now have?

Section 409 of the Banking Code, as amended, reads as follows:

"A bank, a bank and trust company, or a trust company ·may, in paying a dividend, or in pursuance of a plan of merger, consolidation, or reorganization, issue a certificate for a fractional share, and, by action of its board òf directors, may issue in lieu thereof scrip or other evidence of ownership which shall entitle the holder to receive a certificate for a full share upon the surrender of such scrip or other evidence of ownership aggregating a full share, but which shall not entitle the holder to exercise any voting right or to receive any dividend. However, any such holder shall be entitled to participate proportionately in any of the assets of the bank, bank and trust company, or trust company in the event of liquidation. The board of directors may cause such scrip or evidence of ownership to be issued subject to the condition that it shall become void if not exchanged for share certificates before a specified date, or subject to the condition that the shares for which such scrip or evidence of ownership is exchangeable may be sold by the bank, the bank and trust company, or the trust company, and the proceeds thereof distributed to the holders of such scrip or other evidence of ownership, or subject to any other conditions, not prohibited by this act, which the board of directors may deem advisable."

The Banking Code became effective July 3, 1933, by the express provisions of its section 1601, 7 PS §819-1601.

■ Section 409 is permissive rather than mandatory and allows a bank, a bank and trust company, or a trust company, in certain circumstances, to issue its certificates for fractional shares of stock, and as an alternative authorizes the issuance of scrip or other evidences of ownership of fractional shares re-

deemable in full shares of stock when such accumulated portions will equal a whole.

Section 604 of the Banking Code, 7 PS §819-604, with regard to voting rights, provides as follows:

"Every shareholder of record of a bank, a bank and trust company, or a trust company shall have the right, at every shareholders' meeting, to one vote for every share standing in his name on the books of the bank, the bank and trust company, or the trust company."

This provision is similar to that contained in section 504 of the Business Corporation Law of May 5, 1933, P. L. 364, 15 PS §2852-504, which reads as follows:

"Except as otherwise provided in the articles and this act, every shareholder of record shall have the right, at every shareholders' meeting, to one vote for every share standing in his name on the books of the corporation."

With respect to section 504 of the Business Corporation Law and the right to vote fractional shares, Mr. Chief Justice Maxey in Commonwealth ex rel. Cartwright v. Cartwright et al., 350 Pa. 638, 646 (1944), had this to say:

"The power in a stockholder to vote fractional shares of stock is not required for the exercise of the corporation's power to issue such shares of stock. If a corporation merely issued shares of stock and the law did not confer on the owner thereof the power to vote all of such shares, he would have only one vote, as at common law. When a holder of more than one share of stock claims the right to cast more than one vote he must point to a statute giving him that right. In Pennsylvania he can show his statutory authority to cast one vote for every full share of stock he owns, but he cannot show any statutory authority for his casting fractional votes for every fractional share of stock he owns. This right is clearly not conferred by

implication for it is not necessary to the exercise of any right expressly granted."

That interpretation of section 504 of the Business Corporation Law must be adopted as our interpretation of section 604 of the Banking Code.

Under section 2 of the Act of April 17, 1861, P. L. 341, relating to Banks, shareholders were authorized to vote as follows:

". . . For every share of stock, not exceeding ten shares, the holder shall be entitled to one vote; for every two shares of stock, above ten, and not exceeding twenty additional shares, the holder shall be entitled to one vote; and for every five shares of stock above thirty, and not exceeding one hundred, the holder shall be entitled to one vote; and for every ten shares above one hundred, one vote."

The reasoning of the Cartwright decision is applicable to this older banking law and makes inevitable the conclusion that before the effective date of the Banking Code, fractional shares of stock of a bank, a bank and trust company, or a trust company had no voting rights whatsoever.

■ The right of holders of fractional shares of stock of a bank, a bank and trust company, or a trust company, to receive dividends is predicated, not upon a specific authority granted by statute, but rather on the inherent right of every member of a corporation to share equally in the profits of that corporation.

In 18 C. J. S. 1116, Corporations, sec. 469, we have the following:

"The right to dividends is incident to, and dependent on, the ownership of stock, and hence, as a general rule, all persons who own shares of stock at the time a dividend is declared thereon are entitled to share in the dividend in proportion to the amount of their holdings, regardless of the time when they acquired the shares."

In 55 A. L. R. 65 and 66, it is stated:

"The rule is well settled that, in the declaring and paying of dividends, directors of a corporation have no legal right to discriminate between stockholders of the same class, but all are entitled to participate equally in the distribution of the net profits, unless otherwise provided by the terms of their contract with the corporation. Discrimination in the payment of dividends as between stockholders of the same class is not within the discretion of the officers of the corporation. And, since a person holding as owner the stock of a corporation becomes thereby entitled to a proportionate share in the profits of the company, a duty is imposed by law on the corporate body to distribute all dividends which from time to time may be declared ratably on all the capital stock; and from this duty springs an implied promise upon the part of the corporation to pay a particular stockholder the same rate of dividends which it has declared to the other stockholders, which duty, it has been held, may be enforced in an action of assumpsit."

It is said in 13 Am. Jur. 681, Corporations, sec. 680:

"Except where preferences as to dividends are lawfully given to stock of certain classes, a duty is imposed by law on the corporate body to distribute all dividends which from time to time may be declared ratably on all the capital stock, and from this duty springs an implied promise upon the part of the corporation to pay a particular stockholder the same rate of dividends which it has declared to the other stockholders. Discrimination between stockholders of the same class in declaring and paying dividends is not within the discretion of the officers of a corporation, and the directors have no legal right to discriminate between them. A declaration of a dividend is unwarranted which relates only to certain holders of a particular class of stock and is not a ratable distribution

among all the holders of such stock; the corporation cannot discriminate as regards dividends between the large and the small stockholders, . . ."

These case quotations are illustrative:

"Where, therefore, the issue of capital stock is all of one class, dividends must be declared to all shareholders in proportion to their respective holdings.": Thiry v. Banner Window Glass Co., 81 W. Va. 39, 93 S. E. 958, 960 (1917).

"It is certainly true, as a general rule, that a stockholder in a corporation has an interest, in proportion to his stock, in all the corporate property, and has a right to share in any surplus of profits arising from its use and employment in the business of the company; and this legal right does not depend upon the question whether he is a stockholder of long standing or of recent date. The moment a person becomes a stockholder in a corporation all the incidents of interest or *quasi* ownership in the corporate property attach.": Jones v. Terre Haute and Richmond Railroad Co., 57 N. Y. 196, 205 (1874).

While we find no case which in so many words states that dividends are payable by a corporation on outstanding fractional shares, we have no hesitancy, in the light of the foregoing authorities, in concluding this to be the law in Pennsylvania.

Certainly, the reasoning in the Cartwright case with regard to voting rights has no-applicability where dividends are concerned, since voting rights in Pennsylvania are dependent entirely on statute and dividend rights are dependent on the premise that all persons who have any ownership whatsoever in a corporation are entitled to share ratably in the profits of that corporation.

Nor do we think that the latter portion of section 409 of the Banking Code in any way impugns the correctness of our conclusion. The provision, "but which

shall not entitle the holder to exercise any voting right or to receive any dividend" modifies that which immediately precedes it and applies only to scrip or other evidences of ownership which may be issued in lieu of fractional shares. Had the legislature intended the quoted clause to apply to fractional shares of stock it could easily have said so. The common-law right of fractional shareholders to participate in dividends was not taken away by the Banking Code.

■ Scrip and other evidences of ownership of fractional shares, under the ruling of the Supreme Court in the Cartwright case, clearly had no voting rights before 1933. Subsequently, they did not acquire them. For in no uncertain language the legislature has stated in section 409 of the Banking Code that holders of scrip and other evidences of ownership of fractional shares shall not be entitled to vote.

■ Since July 3, 1933, its effective date, by section 409 of the Banking Code, except in liquidation, holders of scrip and other evidences of ownership of fractional shares are not entitled to dividends. Whether before that date holders of such rights were entitled to dividends would seem to depend upon whether they could be considered holders of part of the capital indebtedness of the corporation. And while we think such persons would not be entitled to dividends we find it unnecessary here to decide the question. Scrip or other evidence of ownership of fractional shares issued by a bank before 1933 have either been redeemed or cancelled by this time. This phase of the question appears to be moot.

We are of the opinion and you are accordingly advised:

1. Holders of fractional shares of stock of a bank, a bank and trust company, or a trust company in Pennsylvania, have no right to vote such fractional

shares at any meeting of the stockholders nor did they have any such right prior to July 3, 1933, the effective date of the Banking Code of May 15, 1933, P. L. 624, as amended.

2. Fractional shareholders of such institutions had a right ratably to share in all dividends declared to stockholders of the same class and of this right they were not deprived by the Banking Code, supra.

3. Holders of scrip or other evidences of ownership of fractional shares of a bank, a bank and trust company, or a trust company, may not vote such fractional shares at any stockholders' meeting; nor could holders thereof vote the same at any stockholders' meeting prior to the effective date of the Banking Code, supra.

4. Holders of scrip or other evidences of ownership of fractional shares of a bank, a bank and trust company, or a trust company in Pennsylvania, may not share in any dividends declared on the capital of the corporation. They may, however, share in a liquidation. Whether the holders of scrip or other evidences of ownership of fractional shares could have participated in dividends prior to the effective date of the Banking Code, supra, is a phase of the question which has become moot. It is not answered.