THIGPEN, Judge.
This is an unemployment compensation ease.
Following prior warning, Homer Kelly’s employment by East Alabama Medical Center (hospital) was terminated in November 1992, for work-related misconduct. The record discloses that the misconduct involved inappropriate behavior toward a co-worker and alleged sexual harassment. After Kelly’s request for unemployment compensation was initially granted by a claims examiner, the hospital appealed to the appeals referee, who determined that the claims examiner’s decision was correct. The hospital then appealed to the Board of Appeals of the Department of Industrial Relations (Board). The Board reversed the appeals referee’s decision and denied him unemployment benefits. Kelly filed a complaint for a trial de novo. Following ore tenus proceedings, the trial court found that Kelly’s employment was terminated for cause after warning, and that, pursuant to Ala.Code 1975, § 25-4-78(3)(b), Kelly was disqualified from receiving unemployment benefits. Kelly’s post-judgment motion was denied; hence, this appeal.
The dispositive issue on appeal is whether there was sufficient evidence for a determination that, pursuant to Ala.Code 1975, § 25-4 — 78(3)(b), Kelly was disqualified from receiving unemployment benefits.
Kelly testified that part of his duties included training new co-workers on his shift, and that in October 1992, a female co-worker he was training alleged that he had sexually harassed her. He testified that he had been previously accused of sexual harassment in 1991 by another female co-worker, resulting in a written warning being placed in his personnel file. The memo regarding that incident, which was received into evidence without objection, was signed by Jack Mitchell, director of environmental services, and witnessed by James Counts, Kelly’s supervisor. That memo states:
“Several complaints have been registered against Homer Kelly by female hospital employees. The complaints are sexual in nature and consist of the following:
“1. Offering Money for sexual favors.
“2. Asking for dates.
“3. Hand gestures with his crotch.
“4. Conversations centered around sex.
“Wednesday, September 11, 1991, I counseled Mr. Kelly regarding his conduct especially in the presence of ladies. Any verbal or physical gestures that are sexual in nature will result in immediate termination.”
Although Kelly admitted that in 1991 he received a warning from Counts and Mitchell concerning sexual harassment, he testified that he did not recall receiving a written warning at that time. Kelly testified that he was warned about all of the specific conduct mentioned in the memo, and that he was advised that any further allegations of sexual harassment could result in the immediate termination of his employment. Kelly further testified that he did not know anything was put in his personnel file because nothing had been proven. Kelly’s witness, a former co-worker, whose employment had also been terminated by the hospital, for unrelated reasons, testified that he was surprised when Kelly’s employment was terminated.
Counts testified that he, Mitchell, and Kelly met in 1991 concerning the allegations of sexual harassment, and that he was familiar with the memo, which was read to Kelly at that time and placed in Kelly’s personnel file. Counts testified that Kelly was counselled regarding proper conduct in the workplace, and that the counselling session was the hospital’s equivalent of a disciplinary proceeding. He acknowledged that the truthfulness of the allegations was not ascertained in 1991, and *34 he testified that Kelly was warned in 1991 that any further sexual misconduct toward employees would not be tolerated.
Kate Menifee, a supervisor in the Environmental Services Department, testified that the female co-worker who made the allegations concerning the sexual harassment in 1992 came to her crying and upset and told her what Kelly had done to her.
Vernell Ray, the co-worker who made the allegations, testified regarding the incident. She testified that Kelly made offensive comments and actions toward her, including trying to kiss her against her wishes and putting his arm around her. She testified that she first told her husband and then complained to her supervisor.
Lisa Royal, the human resources manager, testified that she had seen and prepared documents, such as the memo placed in Kelly’s file, and that in cases involving sexual harassment the hospital usually follows the same procedure that was used in Kelly’s case. She testified that under the procedure, the employee is put on notice and advised that other allegations of sexual harassment could result in employment termination. She further testified that Reed Hockery, the new director of environmental services, informed her of the 1992 complaint against Kelly for sexual harassment, and that she personally investigated the allegations. She testified that she and Hockery met individually with Ray and Kelly, and that Kelly had made inconsistent statements during the investigation. Royal testified that the decision to terminate Kelly’s employment was based upon the investigation of this incident and upon Kelly’s previous counseling for similar allegations. Royal further testified that the hospital’s policy regarding certain intolerable offenses, including sexual harassment, included either a suspension or immediate termination because of the seriousness of the misconduct. Royal testified that sexual harassment is an intolerable and egregious offense, and that the hospital will not tolerate its employees being harassed or intimidated, because it subjects the hospital to liability if not properly handled.
Kelly argues that the evidence adduced at trial was insufficient to disqualify him from receiving unemployment benefits. A trial court’s findings in an unemployment compensation case that is tried orally without a jury are presumed correct and will not be reversed unless they are shown to be clearly contrary to the great weight of the evidence. Searight v. State Dep’t of Industrial Relations, 622 So.2d 403 (Ala.Civ.App.1993); and Fugate v. State Dep’t of Industrial Relations, 612 So.2d 1226 (Ala.Civ.App.1992).
Ala.Code 1975, § 25^-78(3)b, provides for disqualification from receiving unemployment compensation benefits if an individual “was discharged from his most recent bona fide work for actual or threatened misconduct committed in connection with his work ... repeated after previous warning to the individual.” Provisions regarding the disqualification for receiving unemployment benefits should be narrowly construed. Ex parte Sargent, 634 So.2d 1008 (Ala.1993).
When conflicting evidence is presented to the trial court, the trial court is free to choose which evidence to believe. Adams v. Allen, 586 So.2d 17 (Ala.Civ.App.1991). Further, it is the duty of the trial court to resolve the conflicts, to determine the weight to be given to the evidence presented, and to determine the inferences to be drawn from the evidence. Payne v. Director of Dep’t of Industrial Relations, 405 So.2d 1322 (Ala.Civ.App.), cert. denied, Ex parte Payne, 405 So.2d 1324 (Ala.1981). Appellate courts do not weigh evidence but instead will “indulge in all favorable presumptions to sustain the conclusions reached by the trial court and will not disturb the conclusion of that court unless it is plainly erroneous or manifestly unjust.” Gann & Lewis Roofing Co. v. Sokol, 359 So.2d 815, 816 (Ala.Civ.App.1978). The record contains sufficient evidence to support a finding of misconduct, and Kelly has failed to show that the trial court’s finding that he was properly terminated for cause after warning was contrary to the great weight of the evidence.
Kelly also argues that the evidence concerning his previous warning was insufficient to allow a total disqualification of benefits. He specifically attacks the validity of the memo by arguing that he did not sign it, that *35 it was not dated, and that there was no evidence that it was presented to him. Kelly’s own testimony reveals that he was aware of all of the specific allegations in the memo and that he was warned that further allegations of misconduct could result in his employment being immediately terminated. Kelly’s own testimony indicates not only that he knew of the specific contents of the memo, but that he knew that the memo was being placed in his personnel file. Ample evidence discloses that Kelly was sufficiently warned that any further misconduct, as specified in the memo, would not be tolerated and could result in his immediate dismissal. Kelly has simply failed to disclose any error on appeal.
AFFIRMED.
ROBERTSON, P.J., and YATES, MONROE, and CRAWLEY, JJ., concur.