WILLIAM E. DAVIS, GENE E. CANNON, RICHARD H. DELANO, THOMAS V. ERNST, HARRY E. FRANKS, LARRY W. GORDON, ROBERT L. HOWELL, TERRY J. KNEER, WILLIAM E. LINDSEY, JAMES E. PECKENPAUGH, ALFRED R. SCHMUCK, EARL J. VOWELS AND ROBERT L. YATES *v.* THE REVIEW BOARD OF THE INDIANA EMPLOYMENT SECURITY DIVISION, WILLIAM H. SKINNER, JAMES M. ORGAN AND NORMA K. KASSENBROCK (MEMBER, NON-PARTICIPATING) AS MEMBERS OF AND AS CONSTITUTING THE REVIEW BOARD AND ARKLA INDUSTRIES, INC.

[No. 2-173A17. Filed September 4, 1973.]

*Gregory D. Ball, Robert F. Wagner,* of Indianapolis, for appellants.

*Theodore L. Sendak,* Attorney General, *Darrel K. Diamond,* Deputy Attorney General, for appellee.

SULLIVAN, J.—Despite appellants' brief which attempts to proliferate issues for consideration by this Court and to insert irrelevant factors obfuscating the matter properly before us for review, the sole question to be resolved is whether

appellants were properly denied unemployment benfits upon the ground that they had engaged in an improper walk-out or "wild cat strike". If the record supports such conclusion, the specific language chosen by the parties with respect to their respective positions, the statements and decisions of the deputies and appeals referees and other extraneous considerations are of no consequence.

While it is difficult to discern the legal nature of appellants' argument or arguments, we have attempted to place their brief within the framework of the provisions of the Employment Security Act which concern disqualification for unemployment benefits. We reject summarily the other purported arguments which we deem spurious and wholly without merit.

On May 18, 1972 appellants, as employees of Arkla Air Conditioning Company of Evansville, Indiana, conducted a walkout of "wild cat strike" in that they either walked off the job or as assigned to a later shift refused to report to work on that date. This unilateral action on the part of some twenty-eight employees, later involving some 150-300 other employees, was occasioned by their displeasure with respect to certain disciplinary action taken against a fellow employee. The walk-out was prohibited by a union contract which was binding upon appellants. The employer Arkla immediately notified the employees by telephone or telegram that they were subject to discharge unless they returned to work. Four of the twenty-eight employees returning to work immediately. The remaining twenty-four were "discharged" by Arkla. Subsequently, and pursuant to the union contract, the matter was submitted to arbitration which resulted in reinstatement of the claimant-appellant without back pay, the period of unemployment being modified from "discharge" to "disciplinary suspension". Appellants made claim for unemployment benefits which claims were all denied by various hearing deputies. The claimant-appellants then proceeded to request a hearing before an appeals referee "because [they] disagree[d] with

the deput[ies'] decision." One such employee obtained a favorable decision from the referee. All others, whose claims were reviewed by a different referee, were denied benefits. Appellants here constitute the latter class.

All appellants' "Requests for Appeal to Review Board" were identical in that they assert the point in issue to be "Discharge for Unjust Cause" and that the decision of the referee denying their consolidated claims for unemployment benefits was erroneous because contrary to and inconsistent with the decision of the referee who allowed benefits to another employee "discharged" at the same time and under the same circumstances as claimants.

The posture of the individual claims as they existed at the time the Review Board considered them was substantially different than at the time they were heard by the individual deputies and appeals referees since in the interim, compulsory arbitration resulted in a reinstatement of claimants without back-pay and in a determination that the period of unemployment was a period of "disciplinary suspension", rather than discharge.

The decision of the Board must then be viewed in the light of the facts before them as opposed to the facts before the deputies and referees. *Hacker* v. *Review Bd.* (1971), 149 Ind. App. 223, 271 N.E.2d 191.

In any event, the findings, conclusions and decisions of the preliminary adjudicators are of no consequence since the Review Board acts independently upon the evidence which is before it. *Thomas Products Co.* v. *Review Bd.* (1969), 145 Ind. App. 425, 251 N.E.2d 473. It is the decision of the Board alone which is reviewable by the Court of Appeals and such review is made without reference to the conclusions of the deputies or referees. *McKinley* v. *Review Bd.* (1972), 154 Ind. App. 387, 290 N.E.2d 108.

For purposes of our determination therefore, we view the issue only with regard to whether the suspension was for just cause.

The controlling statute in full force and effect at the time of the proceedings here is IC 1971, 22-4-14-3, Ind. Ann. Stat. § 52-1538b(e) (Burns 1972 Supp.) which provides that an unemployed individual is "unavailable for work", and therefore ineligible for benefits if he is "suspended for misconduct in connection with his work". Said section further provides that such unavailability because of suspension shall not, for the purpose of unemployment benefits, exceed the week in which he was suspended plus the next five weeks immediately following.[1]

The principal thrust of claimants' argument upon appeal as we discern it is to the effect that a purported finding of suspension for misconduct was not placed into issue by the parties nor is such misconduct supported by evidence of record. Citing *Williamson Co.* v. *Review Board* (1969), 145 Ind. App. 266, 250 N.E.2d 612, the employees assert that since the burden of proving employee misconduct is upon the employer and since at no point in the proceedings did the employer here claim or adduce evidence of misconduct, the Board's determination is erroneous as a matter of law.

A facet of the employees' argument is directed to the only probable cause which could constitute misconduct, i.e., violation of a union contract provision binding upon all claimants which provision forbade "strikes, work stoppages or willful concerted slowdowns." The appellants concede that all claimants refused to work or report to work on May 18 and 19th as a concerted protest to certain disciplinary action taken against a fellow employee. They further concede that the

---

1. The suspension took place on May 20, 1972. The Board's determination that such suspension rendering claimants ineligible for benefits extended through the week ending June 24, 1972 does not therefore exceed the limitation delineated by the statute.

walk-out or failure to report was determined by the employer to be a violation of the "no strike and no work stoppage" clause of the union contract. Appellants, maintain, however, that despite earlier walk-outs or "wildcat strikes", claimants were not warned that such would result in discharge or suspension, and that the "work stoppage rule" was not uniformly enforced because only twenty-four of the participating employees were "discharged", i.e., suspended.

Treating the argument segments in reverse order, we first note that the record discloses that the four employees not suspended had returned to work immediately when notified by the employer that failure to do so would result in "discharge". This fact clearly affords no basis for a claim of discrimination against the twenty-four appellants who remain off the job.

With respect to the matter of a lack of warning to appellants that a walk-out would result in possible discharge or suspension, suffice it to say that the record discloses a clear message to employees on past occasions of a similar nature. In 1967, two employees were laid off for leading a "wildcat strike". Other walk-outs in 1970 and 1971 resulted in similar lay-offs. As recently as one month preceding the incident in question a walk-out was met by the employer, as here, with telegram warnings to the offending employees advising them to return to work or be subject to discharge. The April, 1972 warning was effective, for all participating employees returned and no disciplinary action was taken. It is inconceivable that appellants here seriously claim to be unaware that their walk out would result in disciplinary action, including the possibility of discharge or suspension if they did not return to work.

We now address ourselves to the essence of appellants' argument. Their concessions of record as to the factuality of and reasons for the walk-out, effectively preclude a successful contention that "misconduct" was not proved.

The classic definition of "misconduct" for purposes of the Unemployment Security Act is as contained in *Arthur Winer, Inc.* v. *Review Board* (1950), 120 Ind. App. 638, 641, 95 N.E.2d 214 and often thereafter utilized as in *Thomas Products Co.* v. *Review Board, supra:*

> "It is conduct 'evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employees, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.'"

The evidence of a blatant and unauthorized walk-out is of record by way of appellants themselves and more than meets the accepted definition of misconduct as defined in *Winer, supra*. The action of the employer in "discharging" appellants, as later modified to a "disciplinary suspension" was warranted by the conduct of the employees under the circumstances. The determination of the Review Board to deny unemployment benefits for the week of suspension, plus the five weeks immediately following, was therefore proper and is hereby affirmed.

Buchanan, P.J. and White, J., concur.

NOTE.—Reported at 300 N.E.2d 690.