Thirty-six unemployment compensation cases were consolidated for trial in the circuit court, and the claimants now collectively appeal since compensation was denied to them by the trial court. We affirm.
There is no real controversy over the facts. Therefore, we adopt the following findings of the trial court in that regard:
"Findings of Fact
 "These cases grow out of a strike by certain maintenance employees of the Housing Authority for the City of Montgomery, Alabama (hereinafter Montgomery Housing Authority or Authority). The striking maintenance employees will hereafter sometimes be referred to as claimants. The strike commenced on May 2, 1979, after the Board of Commissioners of the Montgomery Housing Authority took under advisement a request by representatives of the Laborers International Union of North America that such union be recognized by the Authority as the bargaining agent for the maintenance employees. The claimants failed to report for work on the next day, i.e., May 2, 1979, and did not return to work prior to the time they were finally discharged by the Authority on May 24, 1979.
 "On May 9 and 10, 1979, the Executive Director of the Montgomery Housing Authority sent a Notice of Hearing to each striking employee notifying him that a hearing was scheduled to determine whether or not the employee should be dismissed for failing to report for work for more than three days in violation of Rule IX, Section 1, of the Rules and Regulations of the City and County of Montgomery Personnel Department. Very few of the striking employees appeared for such hearings and on May 14, 1979, the Executive Director forwarded another letter to all of the striking employees notifying them of the many benefits they enjoyed as employees of the Montgomery Housing Authority. This letter enclosed a Notice of Termination for failure of the employee to report to work for three days. On May 17, 1979, the Board of Commissioners of the Montgomery Housing Authority held a special meeting to consider the request of the labor union that the Authority recognize such union as the bargaining agent of the maintenance employees. At such meeting, Jesse Griffin, Chairman of the Board, issued a statement to the striking employees and to their attorney. . . .
 "The Board of Commissioners declined to recognize the Union as the bargaining agent for the maintenance employees at the meeting on May 17, 1979. On May 18, 1979, Mr. Charles Price, as attorney for the striking employees, appealed their termination of employment to the Board of Commissioners of the Authority. On May 21, 1979, the Board of Commissioners held another special meeting and considered such appeal and adopted Resolution No. 3170 which reinstated the *Page 267 
maintenance employees to their jobs provided they returned to work immediately and unconditionally. However, the striking employees failed to return to work immediately and unconditionally as provided in Resolution No. 3170 and remained on strike and continued to fail to report for work. On May 24, 1979, another Notice of Termination was sent by the Authority to all of the employees who had failed to report for work for 23 days (including claimants in these consolidated cases). The claimants and the other terminated employees then appealed to the City and County of Montgomery Personnel Board which held a hearing on such appeals on June 8, 1979. On June 15, 1979, the Personnel Board sustained the action of the Montgomery Housing Authority in terminating the employment of the claimants and the other striking employees.
 "The Court finds that under the facts of these cases that the claimants were discharged for actual, deliberate misconduct committed in connection with their work after previous warning. Failing to report for work for 23 days is misconduct within the meaning of the statute, and the claimants received several warnings that they would be dismissed if they failed to report for work for three days or more without cause. They were in effect so notified and warned by the Notices sent on May 9 and 10, 1979; they were again so notified and warned by Mr. Jesse Griffin in his statement at the special meeting on May 17, 1979; they were again warned by the action of the Board of Commissioners at the special meeting on May 21, 1979, when the Board reinstated them provided they returned to work immediately and unconditionally. It is clear to the Court that the claimants would not have been permanently discharged if they had returned to work at any time during the period from May 2, to May 24, 1979. They were given several warnings of the consequences of failing to return to work during such period of time, but the claimants consistently failed to heed such warnings.
"Conclusions of Law
 "The Court concludes and finds that the policy of the Unemployment Compensation Act is to alleviate the burdens of involuntary unemployment and awarding compensation in these cases would be directly contrary to that principle, for these claimants caused their own unemployment and did so only after warnings that if they persisted in their misconduct they would become unemployed. In view of the foregoing findings of fact, the Court concludes that all of the striking maintenance employees (including the claimants herein) were discharged for actual, deliberate misconduct after warnings as provided for in § 25-4-78 (3)(b) of the 1975 Code of Alabama. The claimants are therefore disqualified for unemployment benefits under this section of the law. . . ."
Pertinent portions of § 25-4-78 of the Code 1975 are as follows:
 "An individual shall be disqualified for total or partial unemployment:
 "(1) LABOR DISPUTE IN PLACE OF EMPLOYMENT. — For any week in which his total or partial unemployment is directly due to a labor dispute still in active progress in the establishment in which he is or was last employed. For the purposes of this section only, the term `labor dispute' includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee. This definition shall not relate to a dispute between an individual worker and his employer.
 "(2) VOLUNTARY DEPARTURE FROM WORK. — If he has left his most recent bona fide work voluntarily without good cause connected with such work. . . .
"(3) DISCHARGE FOR DISHONEST OR CRIMINAL ACT. . . . *Page 268 
. . . .
 B. If he was discharged from his most recent bona fide work for actual or threatened deliberate misconduct committed in connection with his work (other than acts mentioned in paragraph a. of this subdivision (3)) after previous warnings to the individual. . . ."
Herein, subdivision (1) of that Code section shall be referred to as the labor dispute section, Subdivision (2) as the voluntary departure from work section, and Subdivision (3)(b) as the misconduct section (although there are other misconduct sections).
The present misconduct section has evolved by means of many legislative amendments. Title 26, § 214 C (1), Code of Alabama (1940) (Recomp. 1958) provided that an employee was disqualified from receiving benefits if he was discharged from his work "for actual or threatened deliberate misconduct after written warning to the individual." In 1973, the legislature amended the misconduct section to its present form. Act No. 1057, Acts of Alabama 1973, § 6 at 1728.
The claimants primarily rely upon the case of T.R. MillerMill Co. v. Johns, 37 Ala. App. 477, 75 So.2d 670, cert. denied,261 Ala. 615, 75 So.2d 675 (1954), wherein, in denying the writ, the supreme court, in part, held (subsection A as referred to in the decision being the then labor dispute section and subsection B being the voluntary departure from work section):
 "Thus, in our view, a fair construction of subsections A and B, supra, would be that if employees are disqualified for benefits under subsec. A when their unemployment was directly due to a labor dispute, regardless of whether they were right or wrong in the controversy, subsec. B, in fairness, could not be construed to mean that they left their work voluntarily when forced out of work by a labor dispute. And according to the facts set out in the opinion of the Court of Appeals, there was a `labor dispute' in the instant case.
 "But as pointed out earlier, petitioner contends that even if there was a labor dispute within the meaning of subsec. A of § 214, the claimants still should be disqualified, for they struck in violation of their contract and this constituted a voluntary leaving of their employment "without good cause" as set out in subsec. B. So although the courts have persistently refused to consider the merits of a labor controversy under provisions such as our subsec. A, petitioner now seeks to have us do it under subsec. B. There would seem to be no basis for the "regardless of merit" interpretation of subsec. A if by virtue of subsec. B a worker was to be disqualified anyway every time he was "wrong." Under subsec. A the claimant is disqualified so long as the dispute continues even if the employer is "wrong." Yet petitioner asks us to hold that under subsec. B the worker is disqualified after the dispute is settled if he was in error in the dispute. So construed, the disabilities imposed by subsec. B would then be a penalty against the worker for being wrong but no corresponding sanction would be imposed on the erring employer. We do not think the Alabama Unemployment Compensation law affords a basis for such result."
At least by implication, if not in actuality, it has been held that the T.R. MILLER case does not preclude the application of the misconduct section in a proper case. BagwellElectric Steel Castings v. State Department of IndustrialRelations, 42 Ala. App. 189, 158 So.2d 122, cert. denied,275 Ala. 677, 158 So.2d 121 (1963). However, it was therein held that the then misconduct section could not be utilized since no written warning had been given to the particular employees as was required by the Code section as it was then written. T.R.Miller did not mention the misconduct section.
"There is a unanimity of opinion on the part of courts and legislatures that government employees do not have the right to strike." United Steelworkers v. University of Alabama,599 F.2d 56 (5th Cir. 1979) affirming 430 F. Supp. 996 (N.D.Ala. 1977);Nichols v. Bolding, 291 Ala. 50, 277 So.2d 868 (1973); Annot., 37 A.L.R.3d 1147, § 3[a] *Page 269 
at 1156, § 15 at 1180 (1971). In the University of Alabama case it was held that the University's maintenance workers' strike was in contravention of the public policy and law of the State of Alabama and that the termination of their employment as public employees was not constitutionally prohibited. Id.430 F. Supp. 1001, 1002. What we have said is no determination by this court as to the merits of the strike, that is whether the claimants or the Authority were right or wrong with relation to their dispute over wages, working conditions, benefits or the recognition of the union. It is not contrary to the prohibition of the T.R. Miller case to state that the maintenance workers as public employees had no right to strike against the Authority.
Neither side has directed our attention to say case which directly holds, either pro or con, that public employees who strike are, or are not, prohibited from recovering unemployment compensation because of deliberate misconduct. It has been decided by an apparent majority of recent cases that the misconduct clause may apply in the private employment sector where an employee knowingly engages in a wildcat strike of his own free will in intentional violation of a specific no-strike clause in the collective bargaining agreement between his union and his employer. For examples, See, ITT Continental Baking Co.v. Davila, 388 So.2d 1254 (Fla.App. 1980); Houck v.Commonwealth Unemployment Compensation Board of Review,45 Pa. Commw. 587, 405 A.2d 1062 (1979); and Davis v. Review Boardof Indiana Employment Security Division, 157 Ind. App. 455,300 N.E.2d 690 (1973). For examples of cases to the contrary, See,Lillard v. Michigan Employment Security Commission, 364 Mich. 401, 110 N.W.2d 910 (1961) and Linski v. Appeal Board of theMichigan Employment Security Commission, 358 Mich. 239,99 N.W.2d 582 (1959), both of which are cited by the claimants. InLinski, the court expressly, and correctly, stated, "We do not hold that a finding that a labor dispute exists necessarily excludes application of the misconduct penalty. What would be misconduct is not cured by the fact that it occurred in the course of a labor dispute." Id. 99 N.W.2d at 586.
We are in accord with the following language in Yellow CabCo. v. Unemployment Compensation Board of Review, 170 Pa. Super. 625, 90 A.2d 599 at 602 (1952):
 "The amending Act denying compensation for unemployment due to discharge for `willful misconduct' is couched in general language, clearly and unmistakably intended to apply to the Unemployment Compensation Law in all of its provisions, without exception, including § 102 (d) (the labor dispute section). "When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." Com. ex rel. Cartwright v. Cartwright, 350 Pa. 638, 645, 40 A.2d 30, 33, 155 A.L.R. 1088. An employee therefore may forfeit his right to unemployment compensation because of willful misconduct even though the misconduct which induced his discharge by the employer is related to a stoppage of work involved in a labor dispute. Nothing in the Act indicates that § 402 (d) was intended to immunize an employee during a work stoppage in a labor dispute from the consequences of his willful misconduct connected with his work involving flagrant breach of duty to his employer and to his union, as in the present instances."
For unemployment compensation purposes, we hold that a labor dispute is not a license for employees to commit deliberate acts of misconduct in connection with their work. A labor dispute does not bar the application of the misconduct section of the Unemployment Compensation Act.
The question thus becomes whether the unexcused absences of these striking public employees under the circumstances of this case constituted actual deliberate misconduct committed in connection with *Page 270 
their work.[1] Misconduct has been defined by 76 Am.Jur.2d 945,Unemployment Compensation, § 52, as follows:
 "Thus, misconduct within the meaning of an unemployment compensation act excluding from its benefits an employee discharged for misconduct must be an act of wanton or wilful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer. Moreover, a continuing recurrence of such violations over a period of time clearly establishes such a deliberate and wilful intent to disregard the rights of the employer as to constitute wilful misconduct within the meaning of such a statutory provision. . . ."
The strike by these public employees and their failure to report to work for twenty-three days constitutes deliberate misconduct in violation of the statute. This is especially true since they knowingly broke the rule of the City and County of Montgomery Personnel Board, which authorizes the dismissal of any city or county employee who, without authority, fails to report to work for more than three days. Their strike and unauthorized absence from their public employment for that long period of time falls within the classic definition of misconduct. That misconduct was deliberate.
Since we must affirm the judgment of the trial court upon its merits, we pretermit a decision upon the other major ground, as urged by the authority, for an affirmance.
The foregoing opinion was prepared by Retired Circuit Judge EDWARD N. SCRUGGS, while serving on active duty status as a judge of this court under the provisions of § 12-18-10 (e) of the Code (1975) and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.
[1] There is no argument nor contention on behalf of the claimants that they were not previously warned in accordance with the present misconduct Code section.