This case involves the denial of a claim for unemployment compensation benefits.
In March 1990, Rodrick J. Fugate was terminated from his employment with USBI, Inc. (USBI). Fugate's subsequent request for unemployment compensation benefits was denied by the State Department of Industrial Relations (Department). Fugate ultimately appealed the denial of benefits to the Circuit Court of Madison County for a trial de novo. Ala. Code 1975, §25-4-95.
Following an ore tenus proceeding, the trial court entered a judgment affirming the Department's decision disqualifying Fugate from unemployment compensation benefits pursuant to Ala. Code 1975, § 25-4-78(3)b. *Page 1228 
Fugate's motion for a new trial was denied; hence, this appeal.
On appeal, Fugate contends that the trial court erred in concluding that Fugate was totally disqualified from unemployment compensation because of committing "misconduct" within the meaning of Ala. Code 1975, § 25-4-78(3)b., and that the trial court erred by denying Fugate a jury trial.
Initially, we note that the findings in an unemployment compensation case tried orally before a trial court, sitting without a jury, are presumed correct unless shown to be clearly contrary to the great weight of the evidence. Adams v.Allen, 586 So.2d 17 (Ala.Civ.App. 1991).
Ala. Code 1975, § 25-4-78(3)b., provides that an individual shall be disqualified from receiving unemployment compensation benefits "[i]f he was discharged from his most recent bona fide work for actual or threatened misconduct committed in connection with his work . . . repeated after previous warning to the individual."
The record reveals that Fugate became affiliated with USBI in January 1988, by working for Space Flight Systems, a sister company of USBI. Fugate testified that he analyzed computer systems and that he dealt with other computer intricacies. The record also reveals that Fugate has been disciplined by USBI on three separate occasions, with the third incident resulting in the termination of Fugate's employment. The first incident involved Fugate's using computer software to transmit reproductions of sexually explicit photographs from a pornographic magazine over office computer screens. Fugate admitted that this incident occurred shortly after his employment with USBI, and for this incident he was given an oral reprimand by management. At trial, Fugate stated that he was using this software after normal work hours, but Joe Trevorrow, USBI's human resource administrator, testified that such action was against company policy since company property was being used. The second incident involved Fugate's making a derogatory racial remark to a co-worker, resulting in Fugate's temporary suspension from USBI.
The third incident involved an allegation that Fugate caused profane and sexually suggestive remarks to be transmitted to the computer screen of a co-worker. The co-worker testified that she had encountered previous problems with Fugate concerning messages Fugate had transmitted on her computer and that she reported the incident to the personnel department. Trevorrow testified that a complaint was made, that USBI conducted an investigation, and that Fugate's employment was terminated for violating company rules regarding sexual harassment. Trevorrow described USBI's disciplinary procedure as follows:
 "On a normal situation, a person is given a verbal reprimand, and this depends on the severity of it. Then if it continues, we give them a written reprimand. If it were to continue then, we would give them a time-off suspension and then finally there would be a discharge. However, in cases of racial slurs and sexual harassment, . . . a person could be discharged immediately."
Trevorrow testified that this policy was communicated to all employees through an employee handbook and that it also was stated in a supervisor's manual to which all employees had access.
As to his first contention, Fugate argues that the trial court misapplied the law to the facts of this case by misconstruing Ala. Code 1975, § 25-4-78(3)b., in three respects: 1) the behavior for which Fugate was discharged did not constitute "misconduct" within the meaning of the statute; 2) Fugate's behavior was not "committed in connection with his work"; and 3) Fugate's behavior was not "repeated" misconduct for which he had received a "previous warning." Fugate argues that the trial court misapplied the law to the facts and citesMoore v. McNider, 551 So.2d 1028 (Ala. 1989), for the proposition that the ore tenus rule is inapplicable to our review. We disagree and will not hold the trial court in error regarding Fugate's first contention.
In arguing that his behavior did not constitute "misconduct," Fugate asserts *Page 1229 
that a brain injury which he suffered in 1978 prevents him from being able to make proper social judgments and that it has rendered him mentally handicapped. Accordingly, Fugate contends that the trial court failed to consider his mental limitations in issuing its judgment. Furthermore, Fugate contends that his behavior was not "misconduct" because, he says, he did not intend for his message to be seen by the co-worker and that he believed his message to be harmless.
"Misconduct" has been described as the " 'continuedfailure of an employee to perform his job in a manner which previous performance indicates is contrary to his experience and ability.' " Davis v. Department ofIndustrial Relations, 465 So.2d 1140, 1142 (Ala.Civ.App. 1985) (emphasis in original, citation omitted). Also, "misconduct" has been described as " 'conduct evincing (1) a deliberate, wilful, or wanton disregard of an employer's interests or of the standards of behavior which he has a right to expect of his employee.' " Davis, supra, at 1142. (Citation omitted.)
After reviewing the record, we cannot say that the trial court's findings as to Fugate's actions were contrary to the weight of the evidence, nor can we say that the trial court failed to consider the possible mental limitations of Fugate.
Fugate argues that his behavior was not "committed in connection with his work" within the meaning of §25-4-78(3)b., because, he says, he sent the message during his lunch hour. We note, however, that Trevorrow testified that Fugate's transmissions over computers after workhours, resulting in his first disciplinary incident, was considered to be against company policy since Fugate was using company property. Finally, Fugate argues that his behavior was not "repeated" misconduct for which he had received "previous warning," because he had never been explicitly warned not to send messages, vulgar or otherwise, via computer. In fact, Fugate states that his two previous disciplinary incidents with USBI involved the "previous warning[s]" not to transmit images and not to make racial slurs, and did not explicitly warn against the behavior which was the subject of his employment termination. Although this is a literally correct statement by Fugate, this is not a correct interpretation of Ala. Code 1975, § 25-4-78(3)b.
In Williams v. James, 446 So.2d 631 (Ala.Civ.App. 1984), Williams, who had been terminated from his employment, appealed the trial court's judgment that he was totally disqualified from unemployment compensation benefits pursuant to Ala. Code 1975, § 25-4-78(3)b. On appeal, the employer contended that Williams's discharge did not resultsolely from one particular incident, but resulted from a steady deterioration of his overall job performance. In affirming the trial court's judgment, this court noted that "the evidence show[ed] that [Williams] was warned several times about his poor job performance and advised that if it did not improve further action would be taken against him."Williams, supra, at 633.
Here, Fugate had been involved in three incidents in approximately two years which resulted in disciplinary action against him. Also, Trevorrow testified that USBI had a progressive discipline policy, and that this policy was made known to Fugate. In fact, the record on appeal contained an internal memorandum dated October 10, 1989, which was sent to Fugate from USBI recommending that Fugate utilize the Employee Assistance Program because of "the latest disciplinary action against you." Following this recommendation, it stated that "[f]ailure to adhere to this memorandum and/or lack of satisfactory professional behavior displayed by you will result in disciplinary action including dismissal." (Emphasis added.)
Finally, Fugate contends that the trial court erred by not granting him a jury trial. We note that, in Ex parteMiles, 248 Ala. 386, 27 So.2d 777 (1946), our Supreme Court held that the predecessor to Ala. Code 1975, §25-4-95, did not allow for the trial by jury of an unemployment compensation case. Although recognizing such holding, Fugate argues that we should overrule Miles. This court, however, does not have the authority to overrule the decisions of our Supreme Court. Maddux v. *Page 1230 Smith, 519 So.2d 1358 (Ala.Civ.App. 1988). In light of Miles, therefore, we hold that the trial court committed no error in denying Fugate's request for a jury trial.
Based on the foregoing, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
ROBERTSON, P.J., and RUSSELL, J., concur.