YATES, Presiding Judge.
Clifford Melcher sued his employer, American Cast Iron and Pipe Company (“ACIPCO”), on December 7, 1998, seeking to recover workers’ compensation benefits for an injury he sustained to his back during the course of his employment with ACIPCO. Melcher and ACIPCO entered into a settlement agreement whereby they agreed to settle Melcher’s workers’ com *992 pensation claim. The trial court approved the settlement on July 16,1999.
Thereafter, Melcher was terminated from his employment with ACIPCO for violating company Rule 23 regarding excessive absenteeism. On October 13, 2000, Melcher petitioned the court to reopen his workers’ compensation claim pursuant to § 25-5-57(a)(3)i., Ala.Code 1975, alleging that his employment with ACIPCO had been terminated.[1] Following an ore tenus proceeding, the trial court entered an order denying Melcher’s petition. Melcher appeals.
This case is governed by the 1992 Workers’ Compensation Act. This Act provides that an appellate court’s review of the standard of proof and its consideration of other legal issues shall be without a presumption of correctness. § 25-5-81(e)(l), Ala.Code 1975. It further provides that when an appellate court reviews a trial court’s findings of fact, those findings will not be reversed if they are supported by substantial evidence. § 25-5-81(e)(2). Our supreme court “has defined the term ‘substantial evidence,’ as it is used in § 12-21-12(d), to mean ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996), quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). This court has also concluded: “The new Act did not alter the rule that this court does not weigh the evidence before the trial court.” Edwards v. Jesse Stutts, Inc., 655 So.2d 1012, 1014 (Ala.Civ.App.1995).
Melcher was 35 years old at the time of the hearing and had been employed with ACIPCO since April 1992. He suffered a back injury in a work-related accident in December 1996. Melcher sought treatment for his back injury and was diagnosed with a herniated disc at the L3-L4 level. He underwent surgery in April 1997 to repair the disc. Following the surgery, Melcher continued to complain of back pain; he was eventually diagnosed with a second herniated disc at the T12-L1 level. He underwent a second surgery in July 1997 to repair the disc. Melcher developed a chronic-pain condition in his back, for which he continued to be treated for his authorized treating physicians at ACIPCO Health Services.[2]
After Melcher settled his workers’ compensation claim, he returned to work with ACIPCO. He worked in several transitional positions that had varying physical demands. He stated that these jobs caused him problems with his back. He continued to receive treatment from the ACIPCO physicians; he was also referred to Dr. Jack Denver, a pain-management specialist, and to Dr. Sean O’Malley for epidural injections. On May 25, 2000, Dr. Denver recommended that Melcher “discontinue working and to seek counseling with [Vocational Rehabilitation Services] for other possible job skills and education.” However, on the following day, Dr. Denver notified the ACIPCO physicians that Mel-cher should be placed in a position that was sedentary and that required no repetitive lifting, bending, squatting, or stooping. Dr. Denver also restricted Melcher from working at unprotected heights or operating equipment that vibrates; he also placed a lifting restriction on Melcher.
*993 Melcher was eventually placed in a position in the human-resource department. He testified that in this position he would have to sit for extended periods of time answering the telephone; he would have to pull blueprints; make copies; walk up and down three flights of stairs; and run errands. He stated that this job also caused him back pain.
Melcher missed substantial amounts of time from work in May, June, July, and August 2000 because of his back condition. ACIPCO had a company policy in place dealing with excessive absenteeism. Rule 23 of ACIPCO’s policy provides:
“Excessive absenteeism: Eleven absenteeism points within 90 calendar days prior to and including the date of the last infraction or 25 points within 865 calendar days prior to and including the date of the last infraction.
“1st offense-Reprimand 2nd offense-One week layoff 3rd offense-Discharge “a. Justifiable absence: Employee hospitalized, illness verified by Company Doctor and reported to supervision 30 minutes before work time, death in immediate family, emergency hospitalization of member of immediate family, scheduled surgery of member of immediate family with minimum of one day prior notice to supervision, approved vacation, jury, military duty or FMLA Leave approved in advance .... 0 points.
“b. Absence, except above, requested and excused day before by supervision .... 1 point (employees with 9 or more active absentee points are not eligible for an excused absence) (*If absence is approved as FMLA Leave any points assigned will be removed.)
“c. Absence not excused day before but reported to supervision 30 minutes before work time .... 3 points (*If absence is approved as FMLA Leave, any points assigned will be removed.)
“d. Absence not excused but reported before end of shift .... 6 points (*If absence is approved as FMLA Leave ... .3 points.)
“e. Absence not excused and not reported before end of shift ... .8 points (*If absence is approved as FMLA Leave .... 5 points.)
“f. Getting off as much as two hours before end of shift will be counted 2 points if not arranged at least one day before; one-half point if arranged at least one day before; 0 point if for one of the justifiable reasons for absence. (*If absence is approved as FMLA Leave .... 0 points.)
[[Image here]]
“ *Points assigned for FMLA approved absences are assigned due to failure to properly notify and not for the actual absence.”
According to Rule 23, if an employee receives 11 absenteeism points within 90 calendar days, the employee is deemed to have violated Rule 23. The employee receives a reprimand for a first-offense violation, a one-week layoff for a second-offense violation, and the employee is discharged for a third-offense violation. Glenn Gardner, an assistant manager at ACIPCO, testified that if an employee is absent from work, the employee will receive no points if he or she notifies ACIPCO at least 30 minutes before the shift begins and is excused from work by a company physician. If the employee notifies ACIPCO 30 minutes before the shift begins that he or she will be absent, but fails to provide documentation from a company physician excusing the absence, the employee receives 3 points. Gardner also stated that if an employee notifies ACIPCO 30 minutes before the shift begins that he or she will be absent from work and is seen by a company *994 physician who does not excuse the employee from work, that employee will receive no points, provided the employee returns to work. An employee receives 2 points for leaving work early.
Melcher testified that he had received a copy of Rule 23 and that he understood how Rule 23 worked, and he recited the point system under that rule. Melcher stated that he knew that he was accumulating points under Rule 23 by missing work and not following the procedures set forth in Rule 23.
Melcher was absent from work[3] for all or part of his shift on May 1-5, 8-12, 16-19, 22-26, and 29-31. He was also absent for all or part of his shift on June 1-3, 5-10, 12-17, and 30. Additionally, Melcher was either absent for all or part of his shift on July 3, 5-7, 13, and 21, and August 1, 10-11,17-18, 23-25, and 29-31.
On May 9-11 and 17-19, Melcher telephoned the office 30 minutes before his shift started, stating that he was sick; however, he failed to produce an excuse from a company physician taking him off of work for those days. He was assessed 3 points for each of these absences, for a total of 18 points. On May 12, Melcher telephoned ACIPCO 30 minutes before his shift started, stating that he would be absent from work in order to attend to “personal business.” He received 3 points for this absence. Melcher left work early on May 8 and again on May 16 and was assessed 2 points on each of these days. He accumulated a total of 25 points for these absences, which put him in violation of Rule 23.
Gardner investigated the absences related to Melcher’s first violation of Rule 23. He testified that it was the employee’s responsibility to provide ACIPCO with an excuse from the company physician; however, before the company administers any form of discipline for a violation of Rule 23, it follows up with the physician to confirm that the employee was not excused from work on a day he received points for being absent. Gardner further stated that ACIPCO also confirms that none of the absences were approved as FMLA leave. Gardner confirmed that Melcher was indeed absent on those days for which he had received points; that no physician had excused those absences; and that none of the absences were approved as FMLA leave. Melcher was informed by the plant guard on May 25 that he was in violation of Rule 23 and that any further points he accumulated would be applied toward a second-offense violation.
Melcher telephoned ACIPCO on May 26, stating that he would be absent that day, but giving no reason for the absence. He received three points for that absence. Melcher called on May 29, 30, and June 2, stating that he would be absent because of sickness. He was assessed three points each for these absences. Melcher accumulated a total of 12 points and was in violation of Rule 23 a second time. He contends that he should not have received points for the June 2 absence, because, he says, he was excused from work by ACIP-CO physicians. Melcher was administered an epidural pain block on May 31. ACIP-CO physicians had noted that Melcher would need to be off work for one to two days after the block. However, the physician who performed the block released Melcher to return to work on June 1.
Gardner investigated Melcher’s absences related to his second violation of Rule 23. Gardner stated that he again confirmed that Melcher was indeed absent from work on the days he was assessed points; that no physician had excused the *995 absence; and that none of the absences qualified as FMLA leave. Gardner recommended to the ACIPCO Board of Operatives (the “Board”) that it further investigate the matter to confirm that Melcher was in fact in violation of Rule 23 a second time, and that if its findings were consistent with his, Melcher be disciplined for a second-offense violation of Rule 23 by being laid off work for one week.
The Board is a group of 12 hourly employees, such as Melcher, elected to represent the interests of the other hourly employees in such matters as working conditions and disciplinary actions. The stated purpose of the Board is to make sure that the employees receive a “square deal.” The Board does not consist of any ACIPCO management personnel. Ronnie Green testified that he was a member of the Board and that he investigated on behalf of Melcher the absences related to his second violation. Green stated that Melcher was unable to provide any information that would aid the Board in its investigation of his absences. Green stated that the Board had no medical records “laying [Melcher] off’ for the days for which he had been assessed points. The Board voted unanimously to lay Melcher off work for one week for a second-offense violation of Rule 23. Gardner made a motion to the ACIPCO disciplinary committee that Melcher be laid off for one week; the motion was seconded by Green. The disciplinary committee voted unanimously to lay Melcher off work for one week. Melcher was informed that any additional points accumulated would go toward a third-offense.
Melcher telephoned the office on June 5-7, stating that he would be absent from work because of sickness; he was assessed three points for each of those three absences. He called on July 21, stating that he would be absent from work because of sickness; he was assessed three points for that absence. He was also assessed two points for leaving work seven hours early on August 29. Melcher had accumulated enough points to be in violation of Rule 23 for a third time. Melcher contends that he should not have been assessed points for the June 6 absence, because, he says, he had been referred to Dr. Luigi F. Bertoli on that day by ACIPCO physicians. The record indicates that Melcher had been referred to Dr. Bertoli on June 6 for treatment of hemochromatosis, a liver ailment unrelated to Melcher’s back condition. Melcher was assessed points because he failed to present documentation from a physician indicating that he would be unable to perform his job duties on that day.
Fred Phillips, a superintendent at ACIPCO, investigated the absences related to Melcher’s third violation of Rule 23. Phillips testified that he confirmed that Melcher was, in fact, absent on the days for which he had been assessed points; that none of the absences were excused by a physician; and that none of the absences qualified as FMLA leave. Phillips recommended that the Board further investigate the matter and that if its findings were consistent with his findings, that Melcher be disciplined for a third-offense violation of Rule 23 by terminating his employment. Green testified that the Board also investigated the absences related to Melcher’s third violation and that Melcher was unable to supply any information that would reduce the points received under Rule 23. The Board voted to terminate Melcher because of a third-offense violation of Rule 23. Phillips moved the disciplinary committee to discharge Melcher from his employment; that motion was seconded by Green. The disciplinary committee voted unanimously to terminate Melcher’s employment. Melcher was terminated on October 3, 2000.
*996 Melcher argues that he should be permitted to reopen his workers’ compensation case, because, he says, injury-related absenteeism does not constitute misconduct. Section 25-5-57(a)(3)i., Ala.Code 1975, provides, in part:
“[I]f the employee has lost his or her employment under circumstances other than any of the following within a period of time not to exceed 300 weeks from the date of injury, an employee may petition a court within two years thereof for reconsideration of his or her permanent partial disability rating:
[[Image here]]
“(iv) The loss of employment is for actual or threatened misconduct committed in connection with his or her work after previous warning to the employee.”
The employer must prove by clear and convincing evidence that the employee’s loss of employment was due to actual or threatened misconduct. § 25-5-57(a)(3)i., Ala.Code 1975. This court has never decided the precise issue before the court— whether injury-related excessive absenteeism after a warning constitutes “actual or threatened misconduct committed in connection with ... work” under § 25-5-57(a)(3)i.(iv). However, this court has interpreted identical language in the context of unemployment-compensation cases. See § 25 — 4—78(3)(b), Ala.Code 1975. This court has defined employee-related misconduct as “ ‘conduct evincing ... a deliberate, wilful, or wanton disregard of an employer’s interests or of the standards of behavior which he has a right to expect of his employee.... ’ Annot., 26 A.L.R.3d 1356, 1359 (1969).” Davis v. Department of Indus. Relations, 465 So.2d 1140, 1142 (Ala.Civ.App.1984). Further, a deliberate violation of an employer’s rules constitutes deliberate misconduct and a continuing recurrence of such a violation over a period of time clearly establishes such a deliberate and willful intent to constitute willful misconduct. Johnson v. Director, Department of Indus. Relations, 470 So.2d 1274 (Ala.Civ.App.1985); Henley v. Housing Auth. for the City of Montgomery, 403 So.2d 265 (Ala.Civ.App.1981).
In Adams v. Allen, 586 So.2d 17 (Ala.Civ.App.1991), an unemployment-compensation case, the employee was terminated from her employment because she had violated the company’s absenteeism policy. The employee was denied unemployment-compensation benefits, because the trial court found that she was guilty of deliberate misconduct under § 25-4-78(3)(b). She claimed that she was too ill to work and that absenteeism based on illness does not constitute misconduct. This court affirmed the judgment of the trial court, but did not reach the issue whether absence because of illness constitutes misconduct. Evidence was presented indicating that the employee’s last absence from work was not because of personal illness, but rather, because the employee had traveled out of state to visit her brother, which would not have been a legitimate excuse and would have been in willful disregard of her employer’s interests. Adams, supra.
In Morrison v. U.S. Pipe & Foundry Co., 598 So.2d 946 (Ala.Civ.App.1992), an unemployment-compensation case, the employee was terminated from her employment because she had been disciplined on six occasions for tardiness within a two-year period. The employee’s unemployment-compensation benefits were denied pursuant to § 25-4-78(3)(b). The parties stipulated at trial that the issue was whether the employee was discharged for misconduct after previous warning pursuant to § 25-4-78(3)(b). The trial court decided the issue in favor of the employer. Morrison, supra.
In Morrison, the employee argued on appeal that she was tardy on her last offense because of an appointment with *997 her attorney and that such an appointment constitutes a justifiable cause for tardiness or absence from work. This court noted that the employee had been warned numerous times about her tardiness, suspended twice for tardiness, and warned that any further tardiness would result in termination from her employment. In affirming the trial court, this court stated:
“The Personnel Director [of the employer] testified that absenteeism and tardiness are a cause of major inconvenience and expense to the company, and therefore, the company’s rules demand prompt and regular attendance. The uncontroverted evidence reflects that [the employee] received many prior warnings vis a vis tardiness. Nonetheless, [the employee] knowingly chose a course of action resulting in her being thirty minutes late to work, rather than timely departing her attorney’s office to avoid tardiness, or choosing to schedule the appointment differently.... The record supports a finding of deliberate misconduct and we must affirm.”
Morrison, 598 So.2d at 948.
In Henley v. Housing Auth. for the City of Montgomery, supra, an unemployment-compensation case, the City had adopted a rule whereby an employee who failed to report to work for three consecutive days without authority could be terminated from his employment. A number of employees went on strike and failed to report to work for 23 consecutive days. The employees were notified that they would be terminated if they did not report to work. The employees were eventually terminated and denied unemployment benefits; the trial court found that they were discharged for actual and deliberate misconduct after warnings pursuant to § 25-4-78(3)(b). Id. In affirming the judgment of the trial court, this court stated:
“The strike by these public employees and their failure to report to work for twenty-three days constitutes deliberate misconduct in violation of the statute. This is especially true since they knowingly broke the rule of the City and County of Montgomery Personnel Board, which authorizes the dismissal of any city or county employee who, without authority, fails to report to work for more than three days. Their strike and unauthorized absence from their public employment for that long period of time falls within the classic definition of misconduct. That misconduct was deliberate.”
Henley, 403 So.2d at 270.
Phillips testified that absenteeism is a cause of inconvenience and expense to ACIPCO and that if the employees fail to follow the rules and not report to work, it causes a loss of production and will require the company to pay overtime to another employee to cover the absent employee’s job. Melcher testified that he was aware of Rule 23 and how it worked and that he knew he was accumulating points under it. He was warned and disciplined for two violations of the rule before being terminated from his employment. The evidence indicates that Melcher was voluntarily absent from his employment on two occasions for which he was assessed points. He testified that on the other days that he was assessed points because he was absent from work without an excuse, he did not see the company doctors, because, he says, “it didn’t do any good”; he said that he had “already went to the doctor, and the only thing he would do is send me back to work.” The record indicates, however, that the ACIPCO physicians had taken Melcher off work and excused his absences at least 29 times between January 2000 and October 2000. Melcher also testified that he did not see the company doctors on the days in question because he would have to “sit four, five, six hours” in order to see them.
*998 We conclude that clear and convincing evidence was presented indicating that Melcher knowingly and intentionally violated Rule 23, after previous warnings, by being absent from work and not obtaining an excuse from a physician, and that such absences constitute “actual or threatened misconduct committed in connection with his ... work after previous warning” under § 25 — 5—57(a)(3)i.(iv), Ala Code 1975. In so holding, we expressly state that absence from work due to illness or injury is not per se misconduct under § 25-5-57(a) (3)i. (iv); rather, the employer must demonstrate that the employee intentionally or deliberately violated a company rule and that the violation was a continuing recurrence after warning. Johnson, supra, and Henley, supra.
Melcher also contends that ACIPCO failed to follow its own policy regarding FMLA leave, because, he says, several of his absences were approved as FMLA leave and others were not. The record indicates that regarding the absences that were approved as FMLA leave, Melcher had followed company policy in obtaining FMLA leave. On the days that FMLA leave was denied, Melcher failed to follow company policy, because he failed to present the necessary documentation from a physician indicating that he was unable to perform his job on the day of the absence. Accordingly, there is no evidence indicating that ACIPCO improperly applied its FMLA policy.
Accordingly, the judgment of the trial court is due to be affirmed.
AFFIRMED.
CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result.

. Melcher had also sued ACIPCO alleging retaliatory discharge. Melcher moved to consolidate the retaliatory-discharge action with the workers' compensation action; however, the trial court denied the motion to consolidate.

. These physicians are employees of ACIPCO.

. All dates listed below are in the year 2000, unless otherwise specified.