PER CURIAM.
Frederick Rouse was employed by the Town of Elberta (“the town”) in 2009 as a police officer. The. town terminated Rouse’s employment on August 15, 2013. After his employment was terminated, Rouse sought, and was denied, unemployment compensation benefits from the Alabama Department of Labor (“the department”). Rouse appealed the- denial of unemployment-compensation benefits to an-administrative hearing officer (“AHO”) for the department. The AHO reversed the initial denial and found that Rouse was eligible to receive benefits; the town’s subsequent appeal to the department’s Board of Appeals (“the board”) was denied.
The town filed an appeal of the board’s decision in the Baldwin Circuit Court (“the trial court”) on February 28, 2014; the department answered on April 4, 2014.[1] The trial court held a trial, at which it received evidence ore tenus, on September 29, 2014, see § 25-4-95, Ala.Code 1975 (providing for appeal to the circuit court in employment-compensation cases and stating that “[t]rial in the circuit court shall be de novo”), and it entered a judgment in favor of the department on October 3, 2014, stating that the town had “failed to establish sufficient evidence to- support the requirements under Ala.Code 1975, § 25-4-78, for disqualification of benefits.” The town filed a motion to alter, amend,. or vacate the judgment on November 3, 2014, which was denied by an order entered on November 18, 2014. The town-timely filed a notice of appeal to this court on November 26, 2014. The town argues on appeal that the trial court’s findings were contrary to the great weight of the evidence and that the trial court applied incorrect standards of law.
We first note that the findings of a trial court in an unemployment-compensation case tried orally before a trial court, sitting without a jury, are presumed correct unless shown to be clearly contrary to the great weight of the evidence, see Adams v. Allen, 586 So.2d 17, 19 (Ala.Civ.App.1991); however, the facts in the present case are essentially undisputed. “[O]n appeal, the ruling on a question of law carries no presumption of correctness, and this Court’s review is de novo.” Ex parte Graham, 702 So.2d 1215, 1221 (Ala.1997) (citing Helms v. Helms’ Kennels, Inc., 646 So.2d 1343 (Ala.1994), and First Mercury Syndicate, Inc. v. Franklin Cnty., 623 So.2d 1075 (Ala.1993)).
Section 25-4-78, Ala.Code 1975, provides, in pertinent part:
“An individual shall be disqualified for total or partial unemployment:
[[Image here]]
“(3) Discharge For Misconduct.
[[Image here]]
“b. If he was discharged from his most recent bona fide work for actual or threatened misconduct committed in connection with his work ... repeated after previous warning to the individual.... ”
The record indicates that, while working the night shift on June 16, 2013, Rouse was involved -in a car chase in which he *476 damaged his patrol ear. According to Rouse, after the car chase ended at approximately 4:00 a.m., he noticed a mailbox leaning .over near where his vehicle had stopped. Suspecting that his car may have collided with the mailbox, Rouse, using a flashlight due to the darkness, visually inspected his vehicle, observing no damage. Rouse did not later inspect the car at the end of his shift in the daylight. However, when Rouse reported for the beginning of his shift the next'day, he-discovered that the patrol car had been damaged.
Stanley DeVane, the town’s chief of police, testified that it was standard operating procedure for police officers to inspect their patrol cars at the beginning and the end of their shifts. Chief DeVane further testified that it was also standard operating .procedure for police officers who are involved in incidents resulting in damage to a patrol car to take a drug test immediately after the damage is sustained. According to Chief DeVane, Rouse should have informed his immediate supervisor or the town’s mayor of the damage once it was discovered, but Rouse did not follow that standard operating procedure; instead, Rouse telephoned Chief DeVane, who was out of town, and reported “minor” damage to the patrol car; it was later estimated that it would cost between $700 and $1,200 to repair the damage to the vehicle. Chief, DeVane instructed Rouse to write a report and to photograph the damage, but he told Rouse that it was too late by that time for Rouse to take a drug test.. Chief DeVane further opined that, had Rouse inspected the patrol car at the end of his shift, in the daylight, he would have discovered the damage in time to take the mandatory drug test.[2] Chief De-Vane testified that Rouse had previously received copies of the standard operating procedures and that Rouse had followed those procedures when reporting damage to-his patrol car resulting from an earlier incident in August 2012.
After the June 16, 2013, incident, Chief DeVane recommended that the mayor and the town council take disciplinary action against Rouse. A disciplinary hearing was held, after which the mayor and the town council decided to terminate Rouse’s employment on August 15, 2013.
The town concedes, that “the employer, has the burden of proving that the employee is disqualified for reasons of misconduct.” Ex parte Rogers, 68 So.3d 773, 781 (Ala.2010). The department argued to the trial court and in its brief op appeal to this court that Rouse’s actions following the June 16, 2013, incident did not rise to the level of misconduct; instead, it contends .that Rouse acted reasonably when he did not discover the damage to the patrol car until the beginning of his next shift and, at that time, immediately reported the, damage to Chief DeVane. However, the town presented evidence indicating that Rouse was aware of the standard operating procedures and that Rouse’s actions on June 16, 2013, violated those procedures.
Notwithstanding the department’s argument that the June 16, 2013, incident alone did not amount to misconduct, the town argues that Rouse was- discharged as a result of multiple instances of misconduct occurring over the course of his employment and that the June 16, 2013, incident was merely the final incident leading to his termination. The town presented evidence to the trial court indicating that Rouse’s failure to comply with policies and proce *477 dures on June 16, 2013, was not an isolated occurrence. On May 10, 2012, Rouse was issued a written reprimand for using a racial slur on three separate occasions in 2012, which were violations of the police department’s professional-conduct policy. Rouse was also counseled in November 2012 for two separate incidents, the first on March 14, 2012, and the second on November 27, 2012, when he left his patrol car running and unlocked while he went inside the police department. The memorandum documenting those, events also stated that a memorandum had been distributed to all police officers on February 21, 2012, addressing the security and operation of patrol cars and that Rouse’s actions on March 14 and November 27, 2012, violated the policy set out in the February 21, 2012, memorandum.
Finally, on November 24, 2012, Rouse responded to a call from the Foley Police Department for assistance with a drug investigation. While at the , crime scene, Rouse removed an iPad tablet computer (“the iPad”) from among other items that the suspects had thrown from the window of their vehicle and took the iPad with him when he left the crime scene. According to Rouse, he did not initially believe the iPad was part of the crime scene, but, later that day, he contacted the Foley police officers responsible for the crime scene, admitted that he had taken the iPad, and returned it to the crime scene. Chief De-Vane testified that, because of Rouse’s actions, the Foley chief of police had advised him that Rouse was not to assist the Foley Police Department in any future capacity, Chief DeVane further testified that removr ing items from a crime scene was also a violation of the town’s police department policies and procedures. , ,
The department, citing Ex parte Rogers, supra, argues in its brief oh appeal that “[i]f the final act for which an employee was terminated does not constitute misconduct then ... § 25 — 4—78(3)(b) does not apply.” This argument is based largely upon a parenthetical reference in Ex parte Rogers, which described the holding in Boynton Cab Co. v. Neubeck, 237 Wis. 249, 258, 296 N.W. 636, 640 (1941), as. being that “mere mistakes, errors of judgment, etc., do not constitute ‘misconduct’; otherwise, the benefit of the unemployment-compensation statute would be defeated as to many of ‘the less cápable industrial workers, who are in the lower income brackets and for whose benefit the act was largely designed....’” 68 So.3d at 781. However, after a careful reading, it is clear that our supreme court made no such holding in Ex parte Rogers. After a détailed legal analysis, the sole holding of our supreme court in Ex parte Rogers was that the employer has the burden of proving that an employee is 'disqualified from receiving unemployment-compensation benefits due to misconduct. Id. The supreme court cited Boynton Cab Co., supra, only to support the argument that the statutory disqualification provisions are to be narrowly construed, and not" to establish a binding and exclusive definition 'of “misconduct.” In fact, in footnote 11 of'the opinion, the supreme court specifically recognized that the parties did not dispute that, if proven, theft of employment property constituted misconduct, Rogers, 68 So.3d at 780 n. 11, so the court had no need to define “misconduct.” See Ex parte Patton, 77 So.3d 591, 596 (Ala.2011) (‘“Black’s Law Dictionai'y 409 (8th ed.2004) defines obiter dictum as: “A judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case...."'"(quoting Carr v. International Refining & Mfg. Co., 13 So.3d 947, 957 n. 3 (Ala.2009))). See also United States Steel Corp. v. Wood, 40 Ala.App. 431, 438-39, 114 So.2d 533, 540 (1959), reversed on other grounds, 269 Ala. *478 5, 114 So.2d 551 (1959) (holding that court of appeals is bound to follow dicta of supreme court only if it plainly indicates how the supreme court would rule on the issue before the court of appeals).
“Misconduct,” for the purpose of § 25-4-78(3)b. has been defined as
“ ‘an act of wanton or wilful disregard of the employer’s interest, a deliberate violation of the employer’s rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer’s interest or of the employee’s duties and obligations to the employer. Moreover,' a continuing recurrence of such violations over a period of time clearly establishes such a deliberate and wilful intent to disregard the rights of .the employer as to constitute wilful misconduct within the meaning of such a statutory provision....’’’
Henley v. Housing Auth. for City of Montgomery, 403 So.2d 265, 270 (Ala.Civ.App.1981) (quoting 76 Am.Jur.2d 945, Unemployment Compensation § 52). In Henley, this court based the definition of “misconduct” on the wording of § 25-4-78(3)b., which, at that time, provided that “actual or threatened deliberate misconduct committed in connection with his work” would disqualify a claimant for unemployment benefits. (Emphasis added.) In 1982, our legislature struck the word “deliberate” from the statute. Ala. Acts 1982, Act No. 82-372. . After noting that legislative action, this court, in Williams v. James, 446 So.2d 631, 633 (Ala.Civ.App.1984), held that “[t]he continued failure of an employee to perform his job in a manner which previous performance indicates is contrary to his experience and ability may be found to be misconduct under section 25-4-78(3)(b), [Ala.] Code. 1975.”. See also Davis v. Department of Indus. Relations, 465 So.2d 1140, 1142 (Ala.Civ.App.1984); Rubin v. Department of Indus. Relations, 494 So.2d 82, 83 (Ala.Civ.App.1986); Fugate v. State Dep’t of Indus. Relations, 612 So.2d 1226, 1229 (Ala.Civ.App.1992); and Mannor Corp. v. Sanders, 624 So.2d 617, 618 (Ala.Civ.App.1993). “Deliberate” misconduct within the meaning of the definition set forth in Henley remains a disqualifying,event under § 25-4-78(3)b., see e.g., Batain v. State Dep’t of Indus. Relations, 606 So.2d 140 (Ala.Civ.App.1992), and Morrison v. U.S. Pipe & Foundry Co., 598 So.2d 946 (Ala.Civ.App.1992), but, as Williams demonstrates, it is no longer the exclusive form of disqualifying misconduct.
The town presented undisputed evidence indicating that Rouse had signed documents acknowledging receipt of the town’s standard operating procedures for police officers and that he had continually failed to comply with those procedures and other police department policies although he had the ability to do so. The town also presented evidence indicating that Rouse had been warned that continued failure to follow the policies and procedures would result in disciplinary action. See § 25-4-78(3)b. In Williams v. James, supra, the employee had received warnings regarding his attendance and job performance, specifically that he had delivered the wrong size of pipe. 446 So.2d at 633. After being warned that further disciplinary action would be taken- if his job performance did not improve, the employee damaged equipment with a forklift that he was operating. Id. The employer determined that to be the “last straw” and discharged the employee. Id. This court affirmed the denial of unemployment-compensation benefits, concluding that the employee had heen warned that, further action would be taken if his performance did not improve. *479 Id. We find Williams instructive in the present case. The record before us indicates that Rouse had been reprimanded for various violations of the policies and procedures of the town’s police department and that he had been warned that continued failure to comply with policies and procedures would result in disciplinary action.
The department points out the potential for abuse of § 25-4-78(3)b. should employers be allowed to cite instances of misconduct that may have occurred at any point throughout an employee’s tenure, however remote in time. Although the department raises a valid concern, it is not applicable to the present case. In Fugate v. State Department of Industrial Relations, supra, this court affirmed a trial court’s judgment determining that Fugate had been fired for misconduct, stating that “Fugate, had been involved in three incidents in approximately two years which resulted in disciplinary action against him.” 612 So.2d at 1229 (emphasis added). In the case before us, the town presented evidence of documented instances of Rouse’s failure to comply with policies and procedures of the town’s police department, all of which occurred in either 2012 or 2013 before the termination of Rouse’s employment on August 15, 2013. Therefore, we cannot conclude that the behavior cited by the town as misconduct occurred too remotely in time to be considered in the case at hand.
In conclusion, the record clearly indicates that the town presented undisputed evidence indicating-that Rouse’s employment was terminated not just for one, but for several, instances of documented misconduct and that he had been warned that continued misconduct would result in disciplinary action. Based upon the foregoing, we conclude, as a' matter of law, that Rouse was disqualified from receiving unemployment-compensation- benefits for reasons of. misconduct. Therefore, the judgment of the trial court is. reversed, and the cause is remanded for the trial.court to enter a judgment consistent with this opinion. • ... .
REVERSED AND REMANDED WITH INSTRUCTIONS..
. THOMPSON, P.J., and PITTMAN, THOMAS, MOORE, and DONALDSON, JJ., concur.

. Although Rouse participated in the appeal before the trial court, the town’s appeal named the board as the only defendant; the department, not the board, participated in the appe.al,before the trial .court and is the-appel-lee in this court.

. The town does not allege that Rouse had consumed any substance that would have impaired his ability to perform his job.